539 So.2d 1216 (1989)
LOUISIANA STATE BAR ASSOCIATION
v.
Murphy J. WHITE.
No. 87-B-2024.
Supreme Court of Louisiana.
March 13, 1989.
*1217 Thomas O. Collins, Jr., Ann L. Neeb, Gerard F. Thomas, Natchitoches, Roland J. Achee, Shreveport, Robert J. Boudreau, Lake Charles, Robert M. Contois, New Orleans, Frank J. Gremillion, Baton Rouge, Carrick R. Inabnett, Monroe, Harvey Lewis, New Orleans, Alfred S. Landry, New Iberia, Philippi P. St. Pé, Metairie, for applicant.
Murphy James White, Mansfield, Randy E. Collins, Logansport, for respondent.
DENNIS, Justice.
This is an attorney disciplinary proceeding in which the bar association seeks to have this court suspend the respondent, Murphy J. White, from the practice of law for a period of 2 to 3 years, alleging that in four separate instances he (1) advised a client to commit perjury, (2) communicated with an adverse party without the consent of that party's attorney, (3) misrepresented to a court the status of a case in another court to avoid being appointed to represent an indigent, and (4) confirmed a default judgment against a former client in the amount of $4,011.44 while concealing from the court that he had received a prior payment of $2,000.00. After reviewing the evidence and considering the commissioner's report and the briefs of counsel, we find the evidence clear and convincing that the respondent committed each alleged violation. Upon considering these violations in light of the aggravating and mitigating circumstances, we conclude that respondent should be suspended from the practice of law for two years.

SPECIFICATIONS OF MISCONDUCT

1. Suborning Perjury
It is alleged that the respondent knowingly advised his client, David Welborn, to give perjured testimony during a deposition in a worker's compensation case by concealing or falsely denying his work activities on two of the four jobs upon which he had worked during his alleged disability. At a pre-trial deposition in his worker's compensation case Welborn revealed two of his jobs but did not disclose the others. However, at trial Welborn fully disclosed his employment on all four jobs. After Welborn's credibility was impeached with his prior inconsistent deposition, the trial judge indicated he might refer the matter to the district attorney for *1218 investigation. Welborn later informed a friend, who was another judge's secretary, that White had advised him to testify falsely as he had done on his deposition. The present disciplinary charge resulted. At the bar investigatory hearing, Welborn testified that prior to the deposition he had been advised by his attorney, White, to lie during his deposition by concealing his substantial work experience on two of the jobs while revealing his brief attempts to work in pain on the other two jobs. Moreover, Welborn said that White advised him to repeat his false testimony at trial. After White learned of Welborn's conversation with the judge's secretary, according to Welborn, White unsuccessfully tried to persuade him to sign a statement that White had not advised him to lie during his deposition or trial.
White denied telling Welborn to give false testimony on his deposition. He said he told Welborn to tell the truth. White admitted that he was aware that Welborn had testified falsely by concealing two of his jobs during his deposition. Further, White conceded that he did not call upon his client to correct his deposition testimony or take any step to inform the court or opposing counsel of the perjury. White testified, however, that he told Welborn before trial that he "might as well tell them everythingthe truthbecause they are going to check."
Under DR 7-102(A)(4) and (7), which White is charged with violating, a lawyer is prohibited from knowingly using perjured testimony or false evidence and from counseling or assisting his client in conduct that the lawyer knows to be illegal or fradulent. We find that the evidence is clear and convincing that White violated these rules. It is unlikely that Welborn would have lied during his deposition if White had in fact instructed him to tell the truth. It is even more unlikely that he would have perjured himself so selectively without his attorney's assistance. White's failure to disclose the perjury to the court or to the opposing counsel indicates his complicity. Moreover, by allowing the perjury to remain concealed so as to possibly influence settlement or the development of the trial, White knowingly made use of the false evidence.

2. Communicating With Adverse Party Without Its Attorney's Consent
The bar association alleges that in connection with Welborn's worker's compensation case Murphy J. White sent a letter to the defendant employer and its insurance carrier demanding payment of medical expenses although he knew that they were represented in the case by an attorney. A copy of this letter was also sent to the trial judge in the case. The respondent testified that the letters were missent due to his secretary's mistake, that he intended that they be sent to opposing counsel. His testimony was equivocal, however, as to whether he had signed the letters. His secretary testified that it was her mistake in addressing the correspondence directly to adverse parties instead of to their attorney. She testified that she could not be certain whether the signature on the letters was that of White. Nevertheless, the Commissioner observes features that convincingly show respondent knowingly sent the letters: the signatures resemble White's signature on other documents; and the letters contain direct demands upon adverse parties and not indirect demands upon them through an attorney. The fact that copies of the letters were sent to the trial judge, and not to opposing counsel, tends to discount the likelihood of secretarial error, and make more likely an attempt by the respondent attorney to intimidate adverse parties. We conclude by finding that the respondent White knowingly "[c]ommunicate[d] or cause[d] another to communicate on the subject of the representation with a party he [knew] to be represented by a lawyer in that matter [without] the prior consent of the lawyer representing such other party...." DR 7-104(A)(1).

3. Misrepresenting Conflict in Trial Schedule
Respondent White filed a motion in a state district court asking to be relieved of appointment as counsel for an indigent on the grounds that such representation *1219 would conflict with his role as counsel in a civil jury case scheduled for trial in federal district court. The bar association asserts that White knew that the federal case had been removed from the trial docket and that he made a false statement of fact in order to escape the appointment to represent an indigent. The United States district judge in whose court the federal case was pending and an attorney representing the adverse party testified that prior to White's motion to be relieved of the appointment, at a pre-trial conference attended by all three, the judge had cancelled the trial in the federal case and had agreed to consider motions for summary judgment to be submitted by the parties. Further, a copy of the minute entry of the federal court reflecting cancellation of the scheduled trial was mailed to the respondent. White claims that he did not receive the minute entry and did not understand the federal judge to say at the pre-trial conference that he definitely had cancelled the trial. However, in view of the definite, consistent, and disinterested testimony of the federal judge and attorney in the federal case, and the unlikelihood that White could have been mistaken or uncertain about whether he had to be prepared for a civil jury trial within 10 days of the date he filed his state court motion, we find that it is highly probable that White knowingly concealed the fact of the federal trial cancellation and made a false statement of fact to the state court in an attempt to be relieved of an indigent appointment. In doing so, he violated disciplinary rules in his representation of a client by concealing or knowingly failing to disclose that which he was required to reveal and by knowingly making a false statement of law or fact. DR 7-102(A)(3) and (5).

4. Defrauding Defaulters
The bar association alleges that White attempted to defraud his former clients, Pattie Presley Ashley and her mother, when he obtained a default judgment against them in the amount of $4,011.44 for unpaid attorney's fees without disclosing to the court that they actually owed him only $2,011.44 because of a $2,000 payment he had received from them prior to taking judgment. When Mrs. Ashley and her mother retained other counsel and moved for a new trial, White admitted at the hearing on the motion for new trial that he had received $2,000 prior to judgment from Henry Ashley, Mrs. Ashley's husband, to be applied on Mrs. Ashley's $4,011.44 debt. At this time White offered no explanation whatsoever for his failure to disclose to the court the $2,000 payment while confirming the default.
Nearly two years later, however, during the 1988 disciplinary hearings, White testified that Ashley had employed him to work on a legal problem unrelated to that of his wife and mother-in-law and had given him the $2,000 as an advance fee for his own separate legal matter, rather than as a payment on the account of Mrs. Ashley and her mother. However, White related, after judgment was rendered against Mrs. Ashley and her mother, Ashley asked him to apply the $2,000 against the judgment. White did not explain in his disciplinary hearing testimony why he failed to give this explanation at the motion for new trial hearing or why he did not simply treat the $2,000 payment as a credit against the judgment, rather than representing to the court that Mrs. Ashley and her mother had paid $2,000 prior to judgment and were therefore entitled to a new trial.
In an attempt to corroborate his testimony regarding his employment by Mr. Ashley, White presented his secretary's testimony that a legal file had been opened for Mr. Ashley's matter. He also introduced the receipt he had given Mr. Ashley for the $2,000 and pointed out that it contained no inscription indicating to which account it applied. On the other hand, the secretary could not remember any legal work that White had done for Mr. Ashley, and White failed to produce any file, memoranda or other documents demonstrating his employment by Mr. Ashley, even though he was ordered to do so by the bar association committee. Mr. and Mrs. Ashley contradicted the evidence White produced at the disciplinary proceedings and testified that the $2,000 was given to White by Mr. Ashley *1220 prior to the default judgment in partial satisfaction of the debt owed by his wife and mother-in-law.
In view of White's clear, unqualified in-court admission at the hearing on the new trial motion that he received $2,000 for Mrs. Ashley and her mother prior to judgment, the fact that this admission occurred some two years before the disciplinary hearings, and the lack of any convincing corroboration of his separate employment by Mr. Ashley, we find that the bar association has proven by clear and convincing evidence that White attempted to defraud his former clients by knowingly taking a default judgment against them for more than they justly owed, through concealment of the true facts from the court.
DR 7-102 sets forth several special duties of candor to the tribunal owed by an attorney as an officer of the court. First, a lawyer may not lie or deceive the tribunal. Second, a lawyer has an affirmative duty to apprise the court of material facts if a failure to do so would assist a crime or fraud upon the court or an opposing party. Third, a lawyer must reveal adverse precedent that is not revealed by opposing counsel. Finally, a lawyer may not knowingly present false evidence, and must take remedial measures to rectify the fraudulent conduct even if the lawyer did not know the testimony was false at the time it was offered. See Hazard and Hodes, The Law of Lawyering: A Handbook on the Model Rules of Professional Conduct, Rule 3.3 (Supp.1988); ABA/BNA Lawyer's Manual on Professional Conduct, 61:304 (1984); See also, e.g., Daniel v. Penrod Drilling Co., 393 F.Supp. 1056 (E.D.La.1975); Ward v. Ochoa, 284 So.2d 385 (Fla.1973); Sanders v. State, 260 So.2d 466 (Miss.1972).
In an ex parte proceeding, a lawyer has the expanded duty to inform the court of all material facts known to the lawyer, even those adverse to the client's position. See State v. Weinstein, 411 S.W.2d 267 (Mo.1967); Garcia v. Silverman, 70 Misc.2d 537, 334 N.Y.S.2d 474 (N.Y.Civ.Ct. 1972); See also Beckman Instruments v. Chemtronics, 439 F.2d 1369 (5th Cir.1970); Marquis, An Appraisal of Attorney's Responsibilities Before Administrative Agencies, 26 Case W. Res.L.Rev. 285 (1976). Since opposing counsel will not be present in ex parte proceedings, and will not be available to expose deficiencies in the proofs or to present countervailing considerations, the tribunal must be protected from making wrong decisions that it would not have made in an adversary proceeding. Hazard and Hodes, supra Rule 3.3 (Commenting on Rule 3.3(d), Model Rules of Professional Conduct, which creates a special duty for the special case of ex parte proceedings).
Consequently, courts frequently have set aside default judgments on the basis of a lawyer's negligent or intentional withholding of relevant material information from the court. See ABA/BNA Lawyer's Manual on Professional Conduct, supra 61:305; See, e.g., Hutton v. Fisher, 359 F.2d 913 (3d Cir.1966); Singer Co. v. Greever & Walsh Whol. Text., 82 F.R.D. 1 (E.D.Tenn. 1977); Dalminter v. Jessie Edwards, 27 F.R.D. 491 (S.D.Tex.1961); The Florida Bar v. Hagglund, 372 So.2d 76 (Fla.1979); In re Schiff, 542 S.W.2d 771 (Mo.1976); In re Albert, 270 A.D. 481, 60 N.Y.S.2d 363 (1946); Light v. State Bar of California, 14 Cal.2d 328, 94 P.2d 35 (1930); People v. Hooper, 218 Ill. 313, 75 N.E. 896 (1905).
Accordingly, we conclude that White, by taking a default judgment against his former clients in the amount of $4,011.44 while intentionally withholding from the court the material fact that the balance due was $2,000 less than this amount because of a prior partial payment, violated his affirmative duty as a lawyer to apprise the court of material facts in order to prevent a fraud upon the court or opposing parties. In particular, we find that White violated DR 7-102(A)(3), (5), and (8), as charged by the bar association, in that he concealed or knowingly failed to disclose that which he was required by law to reveal, he knowingly made a false statement of law or fact, and he knowingly engaged in other conduct contrary to a disciplinary rule. Moreover, White's misconduct necessarily constitutes a violation of disciplinary rule 1-102(A)(1), (4), (5), (6), as charged by the bar association, *1221 mandating that a lawyer shall not violate a disciplinary rule; engage in conduct involving dishonesty, fraud, deceit, or misrepresentation; engage in conduct that is prejudicial to the administration of justice; or engage in any other conduct that adversely reflects on his fitness to practice law.

5. Sanction
Under the ABA Standards for Imposing Lawyer Sanctions, disbarment is generally appropriate when a lawyer, with the intent to deceive the court makes a false statement, submits a false document, or improperly withholds material information, and causes serious or potentially serious injury to a party, or causes a significant or potentially significant adverse effect on the proceeding. Standards § 6.11. Suspension is generally appropriate when a lawyer knows that false statements or documents are being submitted to the court or that material information is improperly being withheld, and takes no remedial action, and causes injury or potential injury to a party to the proceeding, or causes an adverse or potentially adverse effect on the legal proceeding. Standards § 6.12. Reprimand is generally approporiate when a lawyer is negligent either in determining whether statements or documents are false or in taking remedial action when material information is being withheld, and causes injury or potential injury to a party to the proceeding, or causes an adverse or potentially adverse effect on the legal proceeding. Standards, § 6.13.
The respondent attorney in this case intentionally sought to deceive the court on two occasions, once by making a false statement and again by withholding material information, and on a third occasion he failed to take remedial action although he knew false statements had been given in a deposition. However, his acts and omissions did not cause or threaten serious harm to the parties or the proceedings. Therefore, disbarment is not a fitting sanction. On the other hand, since the attorney's offenses were intentional rather than merely negligent, a reprimand is not generally appropriate. Accordingly, the most suitable general category of sanction in this case is suspension.
After misconduct has been established, and the general category of sanction decided upon, aggravating and mitigating circumstances should be considered in deciding the precise sanction to be imposed. Standards § 9.1. The aggravating factors in the present case include: (1) The dishonest or selfish motive behind the attorney's actions regarding the default judgment and indigent appointment; (2) a pattern of misconduct; (3) multiple offenses; (4) refusal to acknowledge wrongful nature of conduct in any instance; and (5) vulnerability of the default judgment victims. Standards § 9.2. The mitigating factors are: (1) absence of a prior disciplinary record; (2) cooperative attitude toward disciplinary proceedings; and (3) inexperience in the practice of law: respondent had been a lawyer for four years when these offenses occurred. Standards § 9.3.
We conclude that a two year suspension is appropriate in this case. Because of the significant aggravating factors, which include a disturbing pattern of dishonesty and self-seeking, a minimum suspension will not serve the goals of professional responsibility. On the other hand, primarily because of the attorney's relative inexperience and lack of a prior disciplinary record, the degree of discipline should not be increased above a two year suspension.

DECREE
IT IS THEREFORE ORDERED, ADJUDGED AND DECREED THAT Murphy J. White be suspended from the practice of law for a period of two years from the date of finality of this judgment. Respondent will bear all costs of this proceeding.
CALOGERO, J., concurs and assigns reasons.
LEMMON, J., dissents and assigns reasons.
CALOGERO, Justice, concurring.
I concur fully in the majority's analysis of the charges against this attorney and in the disciplinary sanction imposed. I write separately only with respect to the majority's *1222 comments on an attorney's duty to disclose material facts to the court. In this case there was an egregious violation of that duty, in that the attorney failed to disclose to the court before taking a default judgment that he had received a $2,000 payment on the amount due from the defendant. Surely he neglected to tell the court what he should have, and through this omission he used the judicial process to obtain a judgment in favor of himself and to which he was not entitled.
The extent of an attorney's duty to disclose adverse information to the court in other situations, in which the materiality of the information allegedly withheld is less clear than was the case here, presents an issue which will have to be assessed on a case by case basis.
LEMMON, Justice, dissenting.
Respondent's consistent pattern of conducthis complicity in a client's lie about employment during his alleged disability in order to recover worker's compensation benefits by settlement or judgment, his false statement in a pleading seeking to avoid representation of an indigent, and his false testimony in obtaining a default judgment for attorney's fees allegedly due himindicate such a flagrant disregard for truth in judicial proceedings that disbarment is warranted.[1] He caused some injury to his client (Ashley had to employ an attorney to set aside the fraudulent default judgment) and caused untold injury to the legal system.
Moreover, these deliberate acts indicate dishonesty rather than inexperience. The fact that respondent had only practiced law for four years and was proved to have committed so many dishonest acts in that short period should be an aggravating, rather than a mitigating, circumstance.
NOTES
[1] Not only did respondent advise his client to lie about his work activities, but also he advised the client not to return to work because of the adverse effect on his compensation claim.

Further, when respondent gave conflicting versions of the $2,000 credit in the default judgment, he lied under oath either to the court in the motion for new trial or to the Bar Association in the investigatory hearing.