508 So.2d 1350 (1987)
LOUISIANA STATE BAR ASSOCIATION
v.
Lawrence G. PUGH, Jr.
No. 85-B-0950.
Supreme Court of Louisiana.
June 22, 1987.
Thomas O. Collins, Jr., Ann LaCour Neeb, Wood Brown, III, Carrick R. Inabnett, Roland J. Achee, Robert J. Boudreau, Frank J. Gremillion, Harvey Lewis, Alfred S. Landry, Philippi P. St. Pee', Gerard F. Thomas, for applicant.
Lawrence Pugh, Jr., L. Lane Roy, for respondent.
Patrick A. Juneau, Jr., Commissioner.
MARCUS, Justice.
The Louisiana State Bar Association, through its Committee on Professional Responsibility, *1351 instituted two proceedings against Lawrence G. Pugh, Jr., a member of said association. Prior to the commencement of each proceeding, the committee had conducted investigations of respondent's alleged misconduct in accordance with article 15, section 3 of the articles of incorporation of the association. Notice of the first proceeding, committee file No. 6994, which involved three specifications of misconduct, was sent to respondent by certified mail dated October 31, 1984. Notice of the second proceeding, committee file No. 7645, which contained one specification of misconduct, was sent by certified mail dated January 8, 1985. A return receipt was received by the committee in each case.
Committee files Nos. 6994 and 7645 were consolidated and the committee held a formal investigative hearing on the specifications set forth on January 29, 1985, as provided in article 15, section 3(b) of the articles of incorporation. Respondent was present at the hearing and was represented by L. Lane Roy. Based on the evidence adduced at the hearing, the committee was of the unanimous opinion that respondent had violated laws of the state relating to the professional conduct of lawyers and the practice of law of sufficient gravity as to evidence a lack of moral fitness for the practice of law. Specifically, the committee found that the evidence supported the charges set forth in specifications one and three of file No. 6994 and specification one of file No. 7645. On May 14, 1985, the committee instituted in this court a suit for disciplinary action against respondent under the provisions of article 15, section 4(c) of the articles of incorporation. Respondent filed an answer to the petition. The court, by order, then appointed Mr. Patrick A. Juneau, Jr. as commissioner to take evidence and file a report with this court setting forth his findings of fact and conclusions of law. Louisiana State Bar Association, article 15, section 6(b) and (d).
A hearing before the commissioner was held on December 27, 1985. Respondent and his attorney were present. The committee introduced in evidence the entire record of the earlier investigative hearing whereupon the committee rested its case subject to any cross-examination. Respondent testified on his behalf. Thereafter, the commissioner filed with this court his written report on September 25, 1986, wherein he stated his findings of fact and conclusions of law. The committee concurred with some of the commissioner's findings but opposed others. After oral argument before this court, the matter was submitted for our determination on the record before the commissioner.
The bar association has the burden of establishing by clear and convincing evidence that respondent was guilty of the alleged specifications of misconduct. Louisiana State Bar Association v. Dowd, 445 So.2d 723 (La.1984).
In committee file No. 6994, three specifications of misconduct were made.[1]
Specification No. 1 alleged:
That in your capacity as Attorney at Law you were retained by Aeropulse Exploration Services Incorporated in September of 1982 to represent them in the repossession of equipment sold to Geoprobe Seismic. That you did request and receive a FIVE HUNDRED AND NO/100ths ($500.00) DOLLAR deposit to cover preparation of documents and expenses to initiate the action. That subsequently you did require and receive a TWENTY THOUSAND AND NO/100ths ($20,000.00) DOLLAR deposit for fees and expenses in the matter. That you did have a petition for Writ of Sequestration prepared and filed in the matter. That despite efforts, demands and communications by your client, you have not returned any portion of said TWENTY THOUSAND FIVE HUNDRED AND NO/100ths ($20,500.00) DOLLARS.

*1352 That you have charged an excessive fee in violation of Disciplinary Rule 2-106[[2]] of the Code of Professional Responsibility of the Louisiana State Bar Association.
Specification No. 3 alleged:
That you were hired in September of 1982 to repossess equipment which your client has sold to Geoprobe Seismic. That you requested and received a total of TWENTY THOUSAND FIVE HUNDRED AND NO/100ths ($20,500.00) DOLLARS as a deposit to cover fees and expenses. That you were dismissed as Attorney for Aeropulse Exploration Services, Inc. on October 13, 1982. That despite the efforts, demands, and communications by your client, you did fail to return any unearned portion of the fee in violation of Disciplinary Rule 1-102[[3]] and DR 2-110(A)(3)[[4]] of the Code of Professional Responsibility of the Louisiana State Bar Association.
The record reveals that Aeropulse Exploration Services, Inc. sold certain equipment to Geoprobe Seismic Corporation on August 3, 1982 for $185,000. Geoprobe made payment of $130,000 but failed to pay the balance due. Officers of Aeropulse contacted respondent in September of 1982 about retaining his services to collect the $55,000 balance due and to have the property seized under a writ of sequestration. Respondent testified that when first contacted by officers of Aeropulse, he stated that his fee to handle the case would be $20,000 because he considered that the party with whom he would be dealing, a Mr. E.J. Dugas, president of Geoprobe, was a dangerous character. Shortly thereafter, representatives of Aeropulse visited respondent's Crowley law office, discussed the case further and tendered respondent a $20,000 check. A $500 deposit to cover expenses was also paid. The next day, respondent testified he met with Dugas at the latter's home in an effort to resolve the matter. He stated that Dugas offered $29,000 in cash to settle the case and placed the settlement offer in dollar bills and a handgun on his desk in the plain view of respondent. This offer was refused by Aeropulse, after which respondent prepared and filed a petition on September 17, 1982 demanding the $55,000 balance due on the equipment, plus interest from date of judicial demand until paid, together with attorney fees in the amount of $20,000, plus $9,554 for collection fees, $60,000 for the loss of two months' rental fees, and *1353 $30,000 due to financial embarrassment, making a total of $174,554. He further prayed for recognition of Aeropulse's vendor's lien and the issuance of a writ of sequestration. Respondent testified that seizure of the property was never effected during his representation of Aeropulse as the property had been moved to Texas and he had not located it by the time he received a letter dated October 13, 1982, in which Aeropulse dismissed him as its lawyer and demanded that he refund $19,000 of the fee. Respondent refused to refund any portion thereof contending that he earned the entire $20,500 in that he had endangered his life and that of his family by representing Aeropulse in the collection matter. Thereafter, Aeropulse filed a complaint with the Committee on Professional Responsibility.
The commissioner found that during the time between September 17 (date of employment) and October 13, 1982 (date of discharge), Aeropulse neither received physical possession of the equipment nor the remainder of the purchase price. While the commissioner did not believe that the legal fee charged was clearly excessive under the circumstances, the committee disagreed considering that the representation was not "so novel or time consuming nor would this matter preclude the possibility of respondent accepting other employment, or impose any undue time constraints on respondent." We agree with the committee. Notwithstanding respondent's fear of dealing with Mr. Dugas, a fixed fee (as opposed to a contingent fee) of $20,500 was clearly excessive under the circumstances. Absent amicable settlement of the claim, respondent was required to file suit and have the equipment seized after locating it under a writ of sequestration during the pendency of the action. Additionally, had respondent not been discharged, he would have been required to obtain a judgment and to execute on it to effect collection. Considering the factors set forth in DR 2-106(B) as guides in determining the reasonableness of a fee, we conclude that respondent charged a clearly excessive fee in violation of DR 2-106 (specification No. 1).
The commissioner also found that the payment of $20,000 was to include all efforts necessary to actually obtain the equipment or payment therefore. Since complete services were not performed as contemplated by the fee agreement, a portion of the fee was unearned and should have been returned to Aeropulse. The commissioner found that considering all the circumstances, including the dealing with Dugas, $18,000 of the fee was unearned.[5] We find that the record fully supports the conclusion that respondent failed to refund promptly that portion of the fee paid in advance that had not been earned in violation of DR 2-110(A)(3) (specification No. 3). The evidence established that respondent met representatives of Aeropulse at the Monroe airport and escorted them to his Crowley law office where they discussed the merits of the case. Respondent also met with Mr. Dugas, president of Geoprobe, at the latter's home. He filed a petition, caused a writ of sequestration to issue and posted the requisite bond. Respondent testified that he estimated spending about ten hours working on the case. Under the circumstances, we concur in the commissioner's finding that $18,000 of the $20,500 fee was unearned by respondent. Respondent also violated DR 1-102.
The following specification of misconduct has been made in committee file No. 7645.
Specification No. 1 alleged:
That on or about October 18, 1983 and January 9, 1984, you were retained in your capacity as Attorney at Law by one Joyce L. Trumps to represent her in a claim brought against her by Cooper Lumber Company of Alexandria, Louisiana. That you received and endorsed two checks in the amount of TWO HUNDRED FIFTY AND NO/100ths ($250.00) DOLLARS each, given to you by Mrs. Trumps. That you failed, refused and neglected to forward the FIVE HUNDRED AND NO/100ths ($500.00) DOLLARS paid to you to the plaintiff lumber company through its attorney of record *1354 to pay off the claim, all to the detriment of your client. That you have commingled and converted to your own use the sum of FIVE HUNDRED AND NO/100ths ($500.00) DOLLARS, all in violation of Disciplinary Rules 1-102(A),[[6]] 6-101(A)(3)[[7]] and 9-102[[8]] of the Code of Professional Responsibility of the Louisiana State Bar Association.
The record reveals that respondent was hired by Joyce L. Trumps to represent her in a claim on an open account brought against her by Cooper Lumber Company. Ms. Trumps paid the $150 fee which respondent requested. Respondent testified that Ms. Trumps contested liability and instructed him to answer the suit. He stated that she wished to file a demand against a third party but failed to provide him with the name and address of said party. Respondent filed an answer generally denying the allegations of the petition. Ms. Trumps testified that she did not contest liability and in fact wished to pay the $500 which she owed. She claims that she personally handed respondent two $250 checks for the purpose of paying her account to the lumber company. One check was a third party check which Ms. Trumps endorsed and the other was her personal check to respondent. Respondent claims that she did not instruct him to pay the lumber company with the $500. He contends that she merely brought the two checks to his office possibly leaving them with his receptionist *1355 and gave no indication as to their purpose. Since he was doing other unrelated work for Ms. Trumps, respondent reasoned that she was paying him for those services rendered. Respondent admitted, however, that he neither sent Ms. Trumps a bill nor discussed a fee with her concerning this other work. Ms. Trumps subsequently engaged another attorney to resolve the open account matter. The suit was eventually settled for $460, which Ms. Trumps paid. Respondent testified that although he believed the $500 constituted a legal fee to which he was fully entitled by reason of rendering services to Ms. Trumps unrelated to the open account matter, he tendered the money back to the original drawing parties "in order to avoid this hearing."[9] As of the date of the commissioner's hearing, Ms. Trumps had not accepted the tender of $250 from respondent. Harry John, drawer of the $250 third party check, accepted respondent's repayment.
The commissioner found that the record did not contain a clear explanation by Ms. Trumps of what she may have told respondent respecting the purpose of the two $250 checks at the time these were delivered to his office. Although respondent believed the two $250 checks were in payment of legal services, he never conveyed this belief to Ms. Trumps at the time these checks were received. The commissioner found a total lack of communication between respondent and Ms. Trumps. Finding insufficient evidence that respondent knew that the $500 was to be paid to Cooper Lumber Company, he concluded that respondent did not violate DR 9-102.[10] However, the commissioner did find that respondent neglected a legal matter entrusted to him in violation of DR 6-101(A)(3) in that he should have ascertained the purpose of the $500 payment and not assumed it was a payment of legal services on other matters. In view of this finding, it was also his opinion that respondent violated DR 1-102(A)(1). We agree with the commissioner.
The purpose of lawyer disciplinary proceedings is not primarily to punish the lawyer but rather to maintain appropriate standards of professional conduct to safeguard the public, to preserve the integrity of the legal profession and to deter other lawyers from engaging in violations of the Code of Professional Responsibility. The discipline to be imposed will depend upon the seriousness of the offense involved and the facts and circumstances of each case. The court will take into account both aggravating and mitigating circumstances. Louisiana State Bar Association v. Hickman, 471 So.2d 696 (La.1985); Louisiana State Bar Association v. Whittington, 459 So.2d 520 (La.1984).
Having found respondent guilty of three specifications of misconduct, we consider that disciplinary action is warranted. Respondent has been found guilty of charging a clearly excessive fee, failing to promptly refund an unearned fee to his client and neglecting a legal matter entrusted to him by his client. The commissioner recommended and the committee concurred that this court direct respondent to pay $18,000 in unearned legal fees to Aeropulse Exploration Services, Inc. and $550 to Joyce Trumps ($250 for payments she intended for Cooper Lumber Company and $300 for extra legal expenses as a result of the neglect regarding the $500 payment). We find no evidence to support Ms. Trumps' payment of additional legal fees. Hence, we do not consider that payment of an additional $300 is appropriate.
Considering the general guidelines set forth in Louisiana State Bar Association v. Hinrichs, 486 So.2d 116 (La.1986), we conclude that an official public reprimand would be the appropriate disciplinary action for respondent's conduct in these matters and that respondent be required to pay $18,000 in unearned legal fees to Aeropulse Exploration Services, Inc. and $250 to Ms. Trumps. Payment should be made on or before 60 days from the date this judgment becomes final and proof of said payment *1356 furnished to the committee. Upon failing to furnish proof of these payments within said time limit, respondent shall be suspended from the practice of law until such time as he furnishes proof to the committee that said payments have been made.

DECREE
For the reasons assigned, it is ordered, adjudged and decreed that Lawrence G. Pugh, Jr. be and he is hereby publicly reprimanded for his conduct in these matters. Respondent is further ordered to pay $18,000 in unearned legal fees to Aeropulse Exploration Services, Inc. and $250 to Joyce L. Trumps on or before 60 days from the date this judgment becomes final and to furnish proof of said payments to the committee. Upon failing to furnish proof of these payments within said time limit, Lawrence G. Pugh, Jr. shall be suspended from the practice of law until such time as he furnishes proof to the committee that said payments have been made. Respondent is to bear all costs of these proceedings.
LEMMON, J., concurs and assigns reasons.
DENNIS, J., concurs for reasons of LEMMON, J.
WATSON, J., dissents.
LEMMON, Justice, concurring.
If the only issue were the excessiveness of the fee charged by an attorney to a corporate client who handles the sales of expensive equipment and who agreed to the fee after an extensive negotiating session with the attorney, I would be inclined to relegate the parties to a civil action instead of a disciplinary proceeding. However, respondent's principal disciplinary transgression was refusing to return any portion of the advanced fee when it was beyond dispute that a substantial portion had not been earned.
An advanced fee for particular services not yet performed constitutes funds of the client which should be placed in a trust account and should not be withdrawn or withheld without the consent of the client.[1] Lawyers' Manual on Professional Conduct, § 45:101 (1984). Here, when the client conceded that a $1,000.00 fee had been earned and demanded return of the remaining $19,000.00 held by the attorney, the attorney should have either refunded the advanced fee or placed the disputed amount in the registry of court while filing a civil action to resolve the dispute over the amount of the earned fee.[2] The attorney's holding the entire advanced fee in order to maintain leverage against his own client was a breach of professional responsibility which warrants the imposition of a suspension. However, since this is the first Louisiana case to raise the issue of the status of advanced fees as funds of the client rather than of the attorney, and since there is no suggestion that this attorney has ever previously refused to refund the unearned portion of an advanced fee, I concur in merely issuing a public reprimand in this case.
NOTES
[1] In specification 2, respondent was charged with failing and neglecting to effect the return of his client's property in connection with his representation of Aeropulse Exploration Services, Inc. in violation of Disciplinary Rules 1-102, 6-101(A)(3) and 7-101(A)(2). The commissioner found that the committee failed to prove this charge. The committee noted in its brief to this court that it concurred with that finding and has abandoned this specification.
[2] DR 2-106 provides:

(A) A lawyer shall not enter into an agreement for, charge, or collect an illegal or clearly excessive fee.
(B) A fee is clearly excessive when, after a review of the facts, a lawyer of ordinary prudence would be left with a definite and firm conviction that the fee is in excess of a reasonable fee. Factors to be considered as guides in determining the reasonableness of a fee include the following:
(1) The time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly.
(2) The likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer.
(3) The fee customarily charged in the locality for similar legal services.
(4) The amount involved and the results obtained.
(5) The time limitations imposed by the client or by the circumstances.
(6) The nature and length of the professional relationship with the client.
(7) The experience, reputation, and ability of the lawyer or lawyers performing the services.
(8) Whether the fee is fixed or contingent. (C) A lawyer shall not enter into an arrangement for, charge, or collect a contingent fee for representing a defendant in a criminal case.
[3] DR 1-102 provides:

(A) A lawyer shall not:
(1) Violate a Disciplinary Rule.
(2) Circumvent a Disciplinary Rule through actions of another.
(3) Engage in illegal conduct involving moral turpitude.
(4) Engage in conduct involving dishonesty, fraud, deceit, or misrepresentation.
(5) Engage in conduct that is prejudicial to the administration of justice.
(6) Engage in any other conduct that adversely reflects on his fitness to practice law.
[4] DR 2-110(A)(3) provides:

(A) In general.
(3) A lawyer who withdraws from employment shall refund promptly any part of a fee paid in advance that has not been earned.
[5] The committee concurred in this finding.
[6] See footnote 3, supra.
[7] DR 6-101(A)(3) provides:

(A) A lawyer shall not:
(3) Neglect a legal matter entrusted to him.
[8] DR 9-102 provides:

A. All funds of clients paid to a lawyer or law firm, other than advances for costs and expenses, shall be deposited in one or more identifiable bank or insured depository institution accounts maintained in the state in which the law office is situated and no funds belonging to the lawyer or law firm shall be deposited therein except as follows:
1. Funds reasonably sufficient to pay bank charges may be deposited therein.
2. Funds belonging in part to a client and in part presently or potentially to the lawyer or law firm must be deposited therein, but the portion belonging to the lawyer or law firm may be withdrawn when due unless the right of the lawyer or law firm to receive it is disputed by the client, in which event the disputed portion shall not be withdrawn until the dispute is finally resolved.
B. A lawyer shall:
1. Promptly notify a client of the receipt of his funds, securities or other properties.
2. Identify and label securities and properties of a client promptly upon receipt and place them in a safe deposit box or other place of safekeeping as soon as practicable.
3. Maintain complete records of all funds, securities, and other properties of a client coming into the possession of the lawyer and render appropriate accounts to his client regarding them.
4. Promptly pay or deliver to the client as requested by a client the funds, securities, or other properties in the possession of the lawyer which the client is entitled to receive.
C. A lawyer may elect to create and maintain an interest-bearing trust account for clients' funds which are nominal in amount or to be held for a short period of time in compliance with the following provisions:
1. No earnings from such an account shall be made available to a lawyer or firm.
2. The account shall include all clients' funds which are nominal in amount or to be held for a short period of time.
3. An interest-bearing trust account may be established with any bank or savings and loan association or credit union authorized by federal or state law to do business in Louisiana and insured by the Federal Deposit Insurance Corporation or the Federal Savings and Loan Insurance Corporation or the National Credit Union Administration. Funds in each interest-bearing trust account shall be subject to withdrawal upon request and without delay.
4. The rate of interest payable on any interest-bearing trust account shall not be less than the rate paid by the depository institution to regular, nonlawyer depositors.
5. Lawyers or law firms electing to deposit client funds in a trust savings account shall direct the depository institution:
a. To remit interest or dividends, net of any service charges or fees, on the average monthly balance in the account, or as otherwise computed in accordance with an institution's standard accounting practice, at least quarterly, to the Louisiana Bar Foundation, Inc.;
b. To transmit with each remittance to the Foundation a statement showing the name of the lawyer or law firm for whom the remittance is sent and the rate of interest applied; and
c. To transmit to the depositing lawyer or law firm at the same time a report showing the amount paid to the Foundation, the rate of interest applied, and the average account balance of the period for which the report is made.
[9] Respondent was referring to the formal investigative hearing of his case conducted by the Committee on Professional Responsibility.
[10] The committee disagreed with this finding.
[1] On the other hand, a retainer, which secures the attorney's general availability to the client and is not related to the fee for a particular representation, belongs to the attorney and need not be placed in a trust account.
[2] At least the attorney should have unconditionally refunded some amount which reasonably represented the unearned portion of the advanced fee.