PIKE HALL, Jr., Justice Ad Hoc.*
This is a disciplinary proceeding by the Louisiana State Bar Association, through its Committee on Professional Responsibility, against one of its members based on alleged violations of the Code of Professional Responsibility and the Rules of Professional Conduct in his dealings with one client.
CHARGES
Based on the complaint of the client, Donald Jessie, the Committee alleged that respondent Allyn P. Roussel violated Disciplinary Rules 1-102(A)(3), (4), (5), (6),[1] 6-101(A)(3),[2] 6-102(A),[3] 7-101(A)(l), (2), (3)[4] of the Code of Professional Responsibility and Rules of Professional Conduct[5] 8.4(b), (c), (d), (g)[6].
The Committee charged four specifications of misconduct on the part of Roussel: (1) he neglected a legal matter entrusted to him, causing his client’s worker’s compensation claim to prescribe; (2) he falsely informed his client that his worker’s compensation claim had been settled and presented his client with a bogus and false *991 settlement letter, thus engaging in conduct which involves dishonesty, fraud, deceit, and misrepresentation; (3) in furtherance of advising his client that the compensation claim was settled Roussel tendered to his client worthless checks, and (4) he failed to cooperate with the Committee in its investigation of the client’s complaint.
PROCEEDINGS
The Committee mailed a copy of the client’s letter to Mr. Roussel on February 8, 1988 asking that he respond to the charges contained in the letter. Mr. Rous-sel did not respond to the Committee’s request for information despite repeated requests. On May 26, 1988 the Committee informed Mr. Roussel that a formal investigatory hearing was scheduled for June 29, 1988 regarding Mr. Jessie’s complaints. A hearing was held on June 29, 1988 during which testimony was received from both Roussel’s client, Donald Jessie and Karen Jackson, a claims adjuster with the Division of Administration, Office of Risk Management. Documentary evidence was also introduced. Mr. Roussel did not appear nor was he represented by counsel. The following facts were established at the hearing.
Donald Jessie retained Roussel on January 7, 1985 to represent him in a worker’s compensation suit for injuries received while working as a guard at the Louisiana Training Institute, a state correctional facility for juveniles. In addition to recovering compensation benefits for his injuries, Jessie was also seeking to regain his job.
The state paid weekly worker’s compensation benefits to Jessie totaling $3,494.56 with the last payment being made on May 6, 1986. Medical expenses totaling $3,824.44 were also paid with the last payment being made on July 21,1987 for medical expenses through April 10, 1986.
In September, 1986 Roussel informed Jessie that his case had been settled with the State of Louisiana on behalf of LTI for the amount of $11,500. Jessie was further informed by Roussel that the settlement was to be paid in two installments in accordance with terms agreed upon by Rous-sel and the State of Louisiana, Division of Administration, Office of Risk Management.
Copies of two letters presented to Jessie by Roussel dated September 8, 1986 were produced at the hearing. These letters were addressed to Roussel on Office of Risk Management letterhead and set forth the terms of the purported settlement. The letters specified that Jessie would receive the $11,500 settlement in two payments on specific dates and that his name would be placed on a non-competive re-employment list.
Roussel later issued three checks to Jessie in the amount of $1,000.00, $300.00, and $100.00, dated October 8, 1986, March 2, 1987, and March 18, 1987, respectively. Roussel told Jessie that the checks were an advancement on the settlement. Jessie was unable to cash the checks because of insufficient funds in Roussel’s bank account.
At the hearing, the Committee introduced copies of Roussel’s bank statements, subpoenaed from the Whitney Bank for September, October, and November of 1986 and February, March, and April of 1987. The statements reveal that Roussel’s account was consistently overdrawn during this time period and that he did not have sufficient funds to cover the checks written to Jessie. Jessie’s attempts to contact Roussel were fruitless and Roussel offered no explanation as to why the checks bounced or why no settlement funds were forthcoming from the State.
In January of 1987, Donald Jessie’s wife contacted Karen Jackson, a risk claims adjuster for the State of Louisiana, Office of Risk Management. Jackson was told that Roussel had advised Mr. Jessie that a settlement of his claim had been reached with the Office of Risk Management. Jackson told Mrs. Jessie there was no settlement of her husband’s claim. The Jessies sent Jackson a copy of the purported settlement letter written on Office of Risk Management letterhead and dated September 8, 1986. She responded by letter on May 26, 1987 advising that the Office had no correspondence to or from Mr. Roussel and no *992 record of anyone ever having talked with him on the telephone. She advised that the settlement letter was not legitimate and no settlement payment was ever made by the Office.
Jackson related at the hearing that there was never any agreement by the State to settle Jessie’s claim and that the letter in question was not issued by the Division of Administration, Office of Risk Management. The individual listed as the State Risk Manager on the letterhead sent to the Jessies was not employed by the State during September 1986. The stationery on which the letter was written was no longer in use in September 1986.
It was Jackson’s belief that Jessie was not owed any settlement on his claim since the Department had information that Jessie was employed while he received benefits, he did not have greater than a 51% disability rating, and the benefits portion of his claim prescribed on May 6, 1987. Jessie stated at the investigatory hearing that he was employed for a few months in 1986.
Following the investigatory hearing the Committee filed a petition for disciplinary action and asked that a Commissioner be appointed to take evidence. A copy of the petition for disciplinary action was personally served upon Roussel. The Commissioner, Rene A. Curry, Jr., held a formal hearing on January 10, 1989. Roussel was sent a letter by the Commissioner informing him of his right to appear at the hearing, present testimony and/or evidence, and employ an attorney to represent him at the hearing. The letter was sent certified mail and was signed for by Allyn Roussel. Roussel did not attend the Commissioner’s hearing nor was he represented by counsel. At the time of the Commissioner’s hearing he had not responded to the complaint and charges made against him. The Committee introduced the record and transcripts of the investigatory hearing. The Committee also offered into evidence copies of two prior formal reprimands with notice issued to Roussel on August 17, 1988 and January 9, 1989.
The Commissioner found that Roussel engaged in conduct involving dishonesty, fraud, deceit, or misrepresentation in that he wrongly attempted to exonerate himself or limit his liability to his client from potential personal malpractice, all in violation of disciplinary rules, DR 6-101(A), DR 1-102(A)(3), (4), (5) of the Code of Professional Responsibility and Rule 8.4(c), (d) of the Rules of Professional Misconduct.
The Commissioner also found that Rous-sel had insufficient funds in his checking account and wrote three worthless checks to Donald Jessie, such that Roussel engaged in conduct involving fraud, deceit, and misrepresentation, in violation of disciplinary rules DR 1-102(A)(3), (4) of the Code of Professional Responsibility and Rule 8.4(b), (c) of the Rules of Professional Conduct. Further the Commissioner found that Roussel failed to cooperate and refused to reply to correspondence from the Committee on Professional Responsibility in its investigation of this matter, thus violating Rule 8.4(g) of the Rules of Professional Conduct.
The Commissioner was unable to determine whether Roussel had permitted Jessie’s worker’s compensation claim to prescribe, which would constitute a violation of Disciplinary Rules 6-101(A)(3), DR 7-101(A)(1), (2), (3) and DR 1-102(A)(5), (6). The Commissioner concluded that Jessie’s claim arising out of his accident on January 7, 1985 did not prescribe until May 6, 1987 at the earliest. The Commissioner noted that at the time of his decision (January 18, 1989) that Jessie may still have time to bring a claim for compensation through May 6, 1989, in the event that the provisions of La.R.S. 23:1209 as read with La. R.S. 23:1221(3) are applicable.[7]
The Commissioner recommended that Roussel be suspended from the practice of law for six months if and only if it is determined by a court of law that Donald Jessie’s worker’s compensation claim has *993 prescribed. The Commissioner recommended Jessie be informed that he should consult with an attorney about his rights concerning his compensation claim, particularly with regard to whether his claim for compensation has prescribed. In the event that a court should determine that Jessie’s claim has not prescribed or if six months elapse from the date of judgment of this court regarding Roussel’s case without Jessie having obtained a court decision regarding his compensation claim, the Commissioner recommended a three month suspension from the practice of law for Roussel.
The Committee disagreed with the Commissioner’s recommendation of discipline, believing that Roussel’s conduct warrants a two year suspension.
MISCONDUCT PROVEN
Prom the evidence compiled at the investigatory and Commissioner’s hearings, we find clear and convincing proof of the following misconduct. Roussel was employed by Donald Jessie to obtain worker’s compensation benefits for Jessie arising out of a work-related injury, and to regain his job. Jessie was paid weekly benefits by the State until May 6, 1986. The record does not disclose whether Roussel was involved in the recovery of these benefits, but the claims adjuster’s lack of knowledge of Roussel’s representation of Jessie indicates he was not. When the payments by the State ceased, Roussel took no action to have the benefits reinstated or to effect a final settlement. Instead, he began to deceive his client by advising him that the State had agreed to settle his compensation claim for $11,500. Roussel confected a bogus settlement letter dated September 6, 1986 which contained the terms of the nonexistent settlement. The letter related that Donald Jessie was to receive $6,500.00 by October 31, 1986 and $5,000.00 by January 9, 1986. (This is obviously a typographical error since the letter is dated September 8, 1986). The terms of the settlement also contained provisions relating to re-employment and compensation payments. The letter was prepared on outdated Office of Risk Management stationery. The individual listed as the administrator of the Office of Risk Management was not employed by the State in September of 1986.
When no checks were forthcoming from the State as called for by the settlement, Roussel proceeded to advance his client’s funds by check. Three checks were issued to Donald Jessie, one for $1,000.00 dated October 8, 1986, one for $300.00 dated March 2, 1987, and one for $100.00 dated March 18, 1987. Mr. Jessie was unable to cash any of these checks since there were insufficient funds in Roussel’s bank account to cover the amount of the checks. A review of Roussel’s bank statements substantiates the finding that Roussel’s account was continuously overdrawn during this period of time. Roussel has never offered an explanation to Donald Jessie, much less to the Committee or this court, for his behavior. Additionally Roussel failed to cooperate or respond to requests for information by the Committee in its investigation of Donald Jessie’s complaint.
We find clear and convincing evidence that Roussel grossly neglected a legal matter entrusted to him, knowingly failed to perform services requested by his client and then engaged in conduct involving deceit in order to conceal the neglect. Rous-sel’s failure to act with reasonable dilgence and promptness, coupled with the deceit, caused his client a delay in the enforcement of his legal rights, as well as the probable loss of those rights to the client’s prejudice. The compensation claim had not prescribed in January, 1987 when Jessie first contacted the Office of Risk Management, but it had prescribed, except possibly as to supplemental earnings benefits, by May 26, 1987 when the Office informed Jessie by letter that no settlement had been made. The record contains no evidence upon which to evaluate whether Jessie had a viable claim for further compensation benefits, and it is difficult to determine the extent of his actual loss or damage caused by his attorney’s conduct. Still, it is clear that the client’s right to pursue his claim was seriously prejudiced.
Roussel’s conduct violated DR 1-102(A)(4), (5), DR 6-101(A)(3), DR 7- *994 101(A)(1), (2), (3), and Rule 8.4(c), (d) and fe).
DISCIPLINE
Absent aggravating and mitigating circumstances, suspension is generally appropriate when a lawyer knowingly fails to perform services for a client and causes injury or potential injury to a client and when a lawyer knowingly deceives a client and causes injury or potential injury to the client, Standards for Imposing Lawyer Sanctions §§ 4.42(a) and 4.62.
Roussel has presented no evidence of mitigating circumstances. He has had over one year to prepare a defense to the specifications charged. Nonetheless he has failed to cooperate and respond to requests for information by the Louisiana State Bar Association Committee and the Commissioner and failed to make an appearance at either proceeding. He has not filed a brief nor made any appearance in this Court. This aggravating factor must be considered along with Roussel’s prior disciplinary offenses which resulted in two private reprimands[8], his refusal to acknowledge the wrongful nature of his conduct, the vulnerability of his victim and his dishonest or selfish motives. See Standards, § 9.22(a), (b), (e), (g), and (h). As evidenced by this case, Roussel’s conduct has not been deterred by reprimands and his lack of cooperation indicates that he has no intention of reforming his conduct. Considering the conduct under review and his two prior private reprimands, we conclude that a two (2) year suspension from the practice of law is appropriate.
DECREE
For the reasons assigned, it is ordered, adjudged, and decreed that Allyn P. Rous-sel be suspended from the practice of law for a period of two (2) years, effective upon the finality of this decision.
Attorney suspended.

 Pike Hall, Jr., Chief Judge of the Court of Appeal, Second Circuit, participated in this case by assignment in place of Associate Justice Harry T. Lemmon.

. Disciplinary Rule 1-102 — Misconduct.
(A) A lawyer shall not:
(3) Engage in illegal conduct involving moral turpitude.
(4) Engage in conduct involving dishonesty, fraud, deceit, or misrepresentation.
(5) Engage in conduct that is prejudicial to the administration of justice.
(6) Engage in any other conduct that adversely reflects on his fitness to practice law.

. Disciplinary Rule 6-101 — Failing to Act Competently.
(A) A lawyer shall not:
(3) Neglect a legal matter entrusted to him.

. Discplinary Rule 6-102 — Limiting Liability to Client.
(A) A lawyer shall not attempt to exonerate himself from or limit his liability to his client for his personal malpractice.

. Disciplinary Rule 7-101 — Representing a Client Zealously.
(A) A lawyer shall not intentionally:
(1)Fail to seek the lawful objectives of his client through reasonably available means permitted by law and the Disciplinary Rules, except as provided by DR 7-101(B). A lawyer does not violate this Disciplinary Rule, however, by acceding to reasonable requests of opposing counsel which do not prejudice the rights of his client, by being punctual in fulfilling all professional commitments, by avoiding offensive tactics, or by treating with courtesy and consideration all persons involved in the legal process.
(2) Fail to carry out a contract of employment entered into with a client for professional services, but he may withdraw as permitted under DR 2-110, DR 5-102, and DR 5-105.
(3) Prejudice or damage his client during the course of the professional relationship, except as required under DR 7-102(B).

. The Code of Professional Responsibility was replaced by the Rules of Professional Conduct, effective January 1, 1987. The alleged violations in this case occurred both before and after the effective date.

. Rules of Professional Conduct. Rule 8.4 Misconduct
It is professional misconduct for a lawyer to:
(b) Commit a criminal act especially one that reflects adversely on the lawyer’s honesty, trustworthiness or fitness as a lawyer in other respects;
(c) Engage in conduct involving dishonesty, fraud, deceit or misrepresentation;
(d) Engage in conduct that is prejudicial to the administration of justice;
(g) Except upon the expressed assertion of a constitutional privilege, to fail to cooperate with the Committee on Professional Responsibility in its investigation of alleged misconduct.

. Under La. R.S. 23:1209, claims for benefits, except supplemental earnings benefits under La. R.S. 23:1221(3), prescribe one year after the last payment of benefits. The prescriptive period for supplemental earnings benefits is three years after the last payment.

. On August 17, 1988, Roussel was issued a formal private reprimand, resulting from his taking a fee to prepare a pre-marital agreement and two wills, then failing to provide a copy of the executed pre-marital agreement to the client and failing to meet with the client to execute the wills. On January 8, 1989, Roussel was issued a second formal private reprimand when he failed to prosecute a client’s property damage case, causing the case to be dismissed. In both instances, Roussel failed to respond to client’s complaints and failed to cooperate with the Committee in its investigation of the complaints.