585 So.2d 514 (1990)
LOUISIANA STATE BAR ASSOCIATION
v.
Patrick H. HARRINGTON.
No. 89-B-2380.
Supreme Court of Louisiana.
December 3, 1990.
As Modified on Grant of Rehearing March 12, 1991.
*515 James Reed Barrow, G. Fred Ours, for plaintiff-applicant.
Patrick H. Harrington, pro se.
Donald R. Miller, for defendant-respondent.

DISCIPLINARY PROCEEDING
COLE, Justice.[*]
Petitioner Louisiana State Bar Association ("LSBA") instituted this disciplinary proceeding against respondent Patrick H. Harrington, a Shreveport attorney. There are four specifications of alleged misconduct in this proceeding. After reviewing the record, we find the respondent committed several disciplinary rule violations *516 which warrant his suspension from the practice of law.
Notice of the specifications of misconduct was forwarded to Harrington on July 14, 1989. The Committee on Professional Responsibility held a formal investigative hearing on August 17, 1989. Harrington appeared at that hearing and was represented by counsel. Following the hearing, the Committee, by unanimous vote, found that Harrington was guilty of the misconduct described in the four specifications.
A petition for disciplinary action was filed by the LSBA, through the Committee, on October 11, 1989. The petition alleged Harrington has been guilty of violation of the laws of this state relating to both the professional conduct of lawyers and the practice of law of sufficient gravity as to evidence a lack of moral fitness for the practice of law. It prayed for disbarment, suspension, or other disciplinary action as deemed appropriate. A Commissioner, Merritt B. Chastain, Jr., was appointed and a hearing was held on March 15, 1990. Harrington appeared at the hearing and was again represented by counsel. On June 4, 1990, the Commissioner filed his findings with this Court. He found Harrington guilty of misconduct on all four specifications, although concluding that, with respect to one of the specifications, Harrington had not violated all the specific Rules of Professional Conduct cited by the LSBA. The Commissioner declined to make a specific recommendation regarding the nature and severity of the appropriate disciplinary action but concluded the case is of utmost importance to the bench, the bar, and the community as a whole and serious disciplinary action against respondent is warranted. Petitioner LSBA concurred in the Commissioner's findings of fact as to all four specifications and in the conclusions of law as to three of the four. It concurred in part and opposed in part the Commissioner's conclusions of law as to the final specification of misconduct.
The matter, having been fully briefed, was orally argued to this Court. Petitioner suggests the appropriate disciplinary action is disbarment of the respondent while the respondent urges a public reprimand is both sufficient and appropriate.
The LSBA has the burden of establishing by clear and convincing evidence Harrington was guilty of the alleged specifications of misconduct. Louisiana State Bar Association v. Pugh, 508 So.2d 1350, 1351 (La. 1987); Louisiana State Bar Association v. Dowd, 445 So.2d 723, 724 (La.1984). We shall address the four specifications of misconduct seriatim.

The James Matter
Petitioner charged, in specification number 1,
That in your capacity as Attorney at Law, you did represent one Gerald Aldrich in a matter involving a dispute over the sale and delivery of carpet from Mr. Aldrich to one Deborah James. That on December 11, 1987, you went to Mrs. James' home in the course and scope of representing your client in the dispute over the carpet. That you did enter into Mrs. James' home without being invited, without permission, and did in a loud voice confront, threaten and/or intimidate Ms. James in the course and scope of attempting to collect funds for your client. That your conduct was in violation of the Fair Debt Collection Practices Act 15 USCS 1692 c. (b) and 15 USCS 1692 e. (14); that you have made false statements of material fact or law to Ms. James; that in representing a client you have used means that have no substantial purpose other than to embarrass delay or burden a third person; that you have failed to carefully explain to Ms. James your role in the matter and have inappropriately given advice to Ms. James in the matter. All of the above in violation of Rule 4.1(a), 4.3, and 4.4 of the Rules of Professional Conduct of the Louisiana State Bar Association.[1]
*517 Petitioner has established various facts in support of this specification. It filed with this Court the record in Aldrich v. James, No. 73115 on the docket of the 26th Judicial District Court. The record reflects James had agreed to purchase some carpet from Aldrich, Harrington's client, on December 8, 1987. On December 11, 1987, while the carpet was being installed, a dispute arose concerning whether the carpet being installed was the same as that which James had ordered. Sometime during the morning of December 11 Harrington arrived at James' home, claimed to be the purchaser of the old carpet, and demanded to know the location of his carpet. He further claimed the police were going to be called to fingerprint and arrest someone for stealing his carpet. Later that day Harrington returned and, without permission, entered James' home and demanded to know James' name, whether she was the owner of the house, when she purchased the house, and from whom she had purchased it. He also threw his business card at James and stated he and his client had a lien on the house as of that day.
The trial court made a finding of fact that "Mr. Harrington barged into Mrs. James' new home, without permission, callously threatening and loudly confronting her, in a totally unprofessional manner," and that James was very upset and frightened by Harrington's actions. The court further concluded Harrington's actions violated the Fair Debt Collection Practices Act. Harrington, in fact, agreed to and paid a monetary settlement to James.
The LSBA has shown by clear and convincing evidence that Harrington violated Rule 4.1(a). He told James there was a lien on her house as of December 11, 1987 when no lien had been filed as of that date (and, in fact, none was filed subsequently). This was a false statement of material fact which Harrington made knowingly in an effort to intimidate James at a time when Harrington had no reason to believe James was not telling the truth about the carpet being other than that which she had ordered. In addition, Harrington did not carefully explain to James his role in the matter; he did not even identify himself by name or indicate that he is a lawyer until he had asked James several questions about the purchase of the home and the carpet. His actions are, therefore, in violation of Rule 4.3 as well.
Respondent argues he was over-zealous in representing his client and recognizes his conduct was inappropriate. He contends his violation of Rule 4.4 "does not appear to be supported by the evidence." He argues James admitted entering into conversation with him voluntarily and never told him to leave; and, she did not think the incident serious enough to call the police. He concedes his actions were abrasive, but not to such a degree as to warrant disciplinary action. We disagree. The bullying means employed by Harrington had no substantial purpose other than to embarrass, delay, or burden a third person. His actions clearly violate Rule 4.4.

The Griffith Matter
Petitioner charged, in specification number 2,
That in your capacity as Attorney at Law, you did represent one Elvira Griffith in a matter entitled State of Louisiana v. Elvira Griffith, number 193216 on the docket of the First Judicial District Court, Caddo Parish, Louisiana. That Ms. Griffith's case was set for trial on September 13, 1988. That you did meet and converse with Elvira Griffith in the hallway of the courtroom prior to the case being called for trial on September *518 13, 1988. That following your conferring with Elvira Griffith, you did go into the courtroom and did engage in a conversation with one Christina Chandler, an Assistant District Attorney. That Ms. Chandler had observed you talking with your client in the hallway and she did mention to you that she had seen you talking with your client. That you did falsely inform Ms. Chandler that the individual you were talking to was not your client. That when the case was called for trial you did mislead the court when you did state that you did not know the whereabouts of your client when in fact you had been talking to your client in the hallway shortly beforehand. That you were cited for contempt of court and were on November 10, 1988 found guilty of contempt of court in this matter. That on February 24, 1989, you were sentenced to pay a fine of $500.00 or spend fifty days in jail and were in addition sentenced to perform thirty days of community service for your contempt of court conviction. That you have committed a criminal act that adversely reflects on your honesty, trustworthiness, or fitness as a lawyer; have engaged in conduct involving dishonesty, fraud, deceit of [sic] misrepresentation; have engaged in conduct that is prejudicial to the administration of justice; that you have made a false statement of material fact to opposing counsel; that you have made a false statement of material fact to a tribunal, and/or have failed to disclose the material fact to both opposing counsel and the court when such disclosure would be necessary to avoid assisting the client in a criminal or fraudulent act, to wit. [sic] failure to appear at trial; that you have assisted a client in conduct that you know to be criminal or fraudulent, to wit. [sic] failure to appear at trial. All of the above are in violation of Rules 1.2(c), 3.3(a), 4.1 and 8.4(a)(b)(c)(d) of the Rules of Professional Conduct of the Louisiana State Bar Association.[2]
The LSBA has introduced portions of the record in the criminal proceeding against Elvira Griffith. From that record, the following facts may be gleaned. Harrington represented Elvira Griffith, a defendant in a criminal case (DWI, second offense). The case was set for trial on September 13, 1988. Harrington met and spoke with his client in the hallway of the courthouse very shortly before the case was called for trial. Following that conversation, Harrington went into the courtroom and spoke with Christina Chandler, an assistant district attorney. Ms. Chandler mentioned she had seen respondent talking with Griffith. Harrington falsely told Chandler the individual to whom he spoke was not Griffith but was a witness in another case. When the case was called for trial Harrington informed the court he did not know the whereabouts of his client. He was cited for and, after a hearing before another *519 judge, was convicted of criminal contempt of court.
Harrington testified at the Committee hearing he had spoken to Griffith earlier in the morning on September 13, 1988, and when the case was called for trial he told the court her whereabouts were unknown to him. He also testified he was about to explain to the court he had seen her that morning but was cut off by the judge.
The judge who heard testimony on the criminal contempt charge did not believe Harrington's testimony. He was in a better position to make this credibility determination than we are. In addition, both Chandler and Katherine Estopinal, another assistant district attorney, testified Harrington told them the person to whom he'd been speaking was not Griffith a mere five minutes after Chandler observed him speaking to her. They each noted Griffith was distinct both in physical appearance and in that she was born in Germany and retained a noticeable German accent when speaking English. Chandler further testified she had observed a videotape of Griffith made at the time of the arrest and had heard Griffith speaking to Harrington in the hallway. She harbored no doubt whatsoever that the woman she had observed was Griffith. In light of this testimony, we agree with the finding of the Commissioner that Harrington's position is untenable.
The petitioner has shown by clear and convincing evidence that Harrington's conduct violated Rule 1.2(c). The only substantial purpose which would have been served by Harrington's misrepresentations to the court and to the prosecutors was to assist Griffith in her failure to appear in court for the scheduled trial.[3] A lawyer has an affirmative duty to apprise the court of material facts if failure to do so would assist a crime or a fraud upon the court. Louisiana State Bar Association v. White, 539 So.2d 1216, 1220 (La. 1989). We find Harrington's actions were intended to assist his client to commit a criminal act.
We also find petitioner has shown by clear and convincing evidence Harrington violated Rule 3.3(a)(1) by knowingly making a false statement of material fact to the trial court when he informed the court he did not know the whereabouts of his client. He had been observed speaking to Griffith a half hour prior to his telling the court he knew nothing of her whereabouts. Harrington poses the question, "What disclosure must an attorney give as to the location of a client in a criminal proceeding?" Under the circumstances of this case, he should at the very least have revealed to the court his client had been in the hallway of the courthouse minutes before and he was currently unable to locate her. See Rule 3.3(a)(2).
Harrington's misrepresentation to the court facilitated Griffith's failure to appear for trial. His misconduct is contrary to the standards of candor which apply to members of the bar and is a serious violation of ethical rules. See White, 539 So.2d at 1221; Louisiana State Bar Association v. Brown, 291 So.2d 385, 388 (La.1974).
By clear and convincing evidence, petitioner also has shown Harrington violated Rule 4.1(a) which prohibits a lawyer from knowingly making a false statement of material fact or law to a third person. After being observed by Chandler and Estopinal speaking to Griffith in the hallway, Harrington falsely told them he was not speaking to Griffith but was speaking to a female witness in another case. He told them he did not know where Griffith was nor did he offer to assist in locating her for her scheduled court appearance. Rather than telling the truth about the matter, respondent chose to lie. His conduct exceeded the bounds of professional propriety in representing his client. He has neither a right nor an obligation to facilitate a client's failure to appear. In fact, as an officer of the court, he had an obligation to be candid about Griffith's whereabouts.
By the same clear and convincing evidence, petitioner has shown Harrington: violated the Rules of Professional Conduct herein specified; committed a criminal act, viz. contempt of court (which reflects adversely *520 on his honesty, trustworthiness, and fitness as a lawyer); engaged in conduct involving dishonesty, fraud, deceit or misrepresentation; and engaged in conduct that is prejudicial to the administration of justice;[4] all in violation of Rule 8.4(a), (b), (c), & (d).

The Freidkin Matter
Petitioner charged, in specification number 4,[5]
That in your capacity as Attorney at Law, you were representing one Steve Lawrason in a matter involving an automobile accident in the City of Shreveport, [sic] That in connection with your representation, you did send a letter to Ms. Margaret Freidkin dated November 8, 1988 wherein you did state, "Please advise this office of the insurance company which you had on your car at the time of this accident. If we do not receive this information within ten days of the date of this letter, I will seek to have felony criminal charges pressed against you and seeked [sic] to have you expedited [sic] from the State of Texas to Louisiana, where you will face criminal charges." That subsequently, by correspondence dated November 21, 1988, you did either send to Mr. Donald J. Freidkin or carbon copy Donald J. Freidkin with letters which are threatening in nature. That you have used means and have no substantial purpose other than to embarrass, delay, or burden a third person; that you have threatened to present criminal charges solely to obtain an advantage in a civil matter; all in violation of the Rules 4.4 and 8.4(h) of the Rules of Professional Conduct of the Louisiana State Bar Association.[6]
Harrington has admitted writing the letters in question. He has also acknowledged he "certainly should not have indicated that criminal charges would be filed." It is thus clear Harrington violated Rule 8.4(h) when he threatened Margaret Freidkin with extradition from Texas to face unspecified felony criminal charges solely to obtain an advantage in a civil matter, to wit, a hit and run accident involving a car which was purchased by the Freidkins after the date of the accident.
Harrington did not attempt to search the title of the vehicle or otherwise ascertain who owned it on the date of the accident. Had he done so, he would not have employed the tactics used against Mrs. Freidkin. Also, alternative legal means were available to discover what insurance coverage was available to benefit his client. The fact that Harrington made no effort to avail himself of such means indicates his tactics had no substantial purpose other than to embarrass or burden a third person, in violation of Rule 4.4. We agree with the Commissioner respondent's actions as regards Margaret Freidkin constituted the misconduct with which he has been charged.

Ex Parte Communication to Judge
Petitioner charged, in specification number 5
That on August 31, 1988 during the morning hours, you did place a telephone call to James E. Clark, Judge of the First Judicial District Court in and for the Parish of Caddo, State of Louisiana.

*521 That at the time you made the phone call you were not counsel of record for either the State of Louisiana, nor [sic] Tina Brumlett in a matter entitled State of Louisiana v. Tina Brumlett, number 142066 pending in the First Judicial District Court, Caddo Parish, before the Honorable James E. Clark, Judge. That in the above detailed telephone call, you did proceed to inform the Judge of a number of matters which were detrimental to the defendant, Tina Brumlett, in a matter pending before the Judge on his docket. That you did this by telephone; that you did this exparte [sic]; and that you did this without permission, advice, or knowledge of counsel representing either the State of Louisiana or Tina Brumlett in the above referenced criminal case. The telephone call you made to the Judge was not solicited by the Judge and the Judge tried to explain to you that it was absolutely forbidden for you to have such a discussion with the Judge in an attempt to influence him. That you have engaged in conduct involving dishonesty, fraud, deceit, or misrepresentation; conduct that is prejudicial to the administration of justice; that you have used means that have no substantial purpose other than to embarrass, delay or burden a third person; that you have sought to influence a judge by means prohibited by law; that you have made an exparte [sic] communication with a judge when you were not permitted to do so by law; all of the above in violation of Rules 3.5, 4.4, and 8.4(a) (c) (d) of the Rules of Professional Conduct of the Louisiana State Bar Association.[7]
Petitioner has presented clear and convincing evidence that Harrington did, in fact, make the telephone call in question to Judge Clark. Harrington admitted making the telephone call during the August 17, 1989 Committee hearing. Petitioner has also filed in the record the transcript of the proceedings in the Brumlett case which contains Judge Clark's account of the telephone conversation. This account substantiates the allegations set forth in specification 5.
Judge Clark related that Harrington told him during the telephone conversation that he, Harrington, had represented Brumlett's boyfriend and Brumlett had become upset with him because he would not share information with her concerning that case. Harrington told the judge Brumlett had thrown an object through the front door of his home, she was from out of state, and would probably jump bond.[8] The judge was "quite frankly shocked and surprised that a member of the bar who knows better or ought to know better would have done that...."
We conclude Harrington's action violated Rule 8.4(d), and a fortiori Rule 8.4(a), by engaging in conduct prejudicial to the administration of justice. Harrington easily could have sought to intervene in open court at the bond hearing. Instead, operating surreptitiously, he sought to provide the judge with advance information, prejudicial to the defendant, which could not be disputed by the defendant. That such an action violates established legal norms is clear beyond peradventure.
We determine also respondent's contact with Judge Clark violates Rule 3.5(a) & (b). The Commissioner concluded Harrington did not seek to influence a judge by means prohibited by law. He reasoned the Rule 3.5(a) phrase "by means prohibited by law" must be construed narrowly to include only such activities as would amount to obstruction of justice, public bribery, or other criminal acts. We disagree.
Petitioner notes the phrase "by means prohibited by law" is discussed in AMERICAN BAR ASSOCIATION, ANNOTATED MODEL RULES OF PROFESSIONAL CONDUCT (1984). "Conduct `prohibited by law' clearly *522 includes violations of criminal law and presumably includes other acts that violate statutes, court rules, or other legal norms." Id. at 232. We have held the Code of Professional Responsibility, superseded on January 1, 1987, by the Rules of Professional Conduct, has the force and effect of substantive law. E.g. Succession of Cloud, 530 So.2d 1146, 1150 (La.1988). Similarly, the Code of Judicial Conduct, adopted by this Court, has the force of law. Canon 3A(4) provides "[e]xcept as permitted by law, a judge should not permit private or ex parte interviews, arguments or communications designed to influence his judicial action in any case, either civil or criminal." We hold an attempt to induce a judge to violate this Canon is a means prohibited by law. Harrington made an ex parte communication to Judge Clark. The telephone conversation with the judge was clearly intended to influence the judge to set a higher bail than he might otherwise have been inclined to set. The information was adverse to the accused on the merits of the issue before Judge Clark and was communicated in a manner which sought to induce a violation of Canon 3A(4). Hence, Harrington's telephone call sought to influence a judge by means prohibited by law.
The Commissioner further found Harrington did not violate Rule 3.5(b), prohibiting ex parte communications with a judge except as permitted by law. He concluded the rule is unreasonably vague, noting the lack of legislative or jurisprudential authority setting forth circumstances under which an attorney may communicate on an ex parte basis with a judge. The Commissioner believes Rule 3.5(b) should be read to prohibit only those ex parte communications seeking to influence a judge on a matter in which the attorney is counsel for one of the parties. We respectfully disagree with the Commissioner's restrictive reading. As an attorney, Harrington is presumed to be familiar with the Code of Judicial Conduct. He should have known his telephone call, designed to influence the judge in a matter pending before him the same day, could not have been "permitted by law."
"Under the ABA Model Rules, ex parte communications are barred even if it is not clear that the lawyer intended to influence the judge." Annotated Model Rules at 234. "A lawyer need not represent a party to a case to be subject to the Rule 3.5(b) proscription against ex parte communication." Id. It is thus clear that the intention of the Model Rule, adopted in Louisiana verbatim, is that the communication need not be made by the attorney while representing a client and, in fact, need not be made with the intent to influence the judge. We conclude Harrington's unsolicited, ex parte communication to Judge Clark violated Rule 3.5(b).

Motion to Remand
On August 14, 1990, Harrington filed a motion seeking either permission to file sworn deposition testimony with this Court or a remand to the Commissioner to take additional evidence. The sworn statements purport to be those of Elvira Griffith and Sandra Kay Bruce. Bruce allegedly was the woman to whom Griffith spoke in the courthouse hallway. The statements are offered to corroborate Harrington's assertions that: (1) he had nothing to do with Griffith's failure to appear and (2) she left the courthouse without his knowledge. We referred the motion to the merits and now deny the motion.
The depositions were taken without notifying opposing counsel and affording opposing counsel an opportunity to cross-examine the deponents. The depositions were taken in mid-June 1990, but Harrington waited until mid-August 1990 to notify opposing counsel and this Court of their existence. Harrington's dilatory action evinces a lack of due diligence on his part. In addition, the identity of the deponents cannot be verified since only Harrington attended the depositions, with his attorney participating by telephone. Further, the depositions are hearsay, and Harrington has asserted no exception to the hearsay rule under which they might properly be admitted.
Remanding the case to the Commissioner would be pointless since the deponent *523 claiming to be Griffith states she will not come to Louisiana to testify, will not provide any address or telephone number, and will not testify with anyone else present. Moreover, Griffith is a fugitive from justice. We shall not facilitate a fugitive's continued avoidance of justice, and what we decline to do directly we shall not permit the Commissioner to do. Similarly, no interest is served by remanding to hear Bruce's testimony. Harrington's vague assertions as to her corroborative testimony do not outweigh his having failed to act diligently to bring her before the Commissioner or to allow opposing counsel to participate in the deposition.

Discipline
The purpose of lawyer disciplinary proceedings is not primarily to punish the lawyer but rather to maintain appropriate standards of professional conduct to safeguard the public, to preserve the integrity of the legal profession, and to deter other lawyers from engaging in violations of the Rules of Professional Conduct. The discipline to be imposed will depend upon the seriousness of the offense involved and the facts and circumstances of each case. We take into account both aggravating and mitigating circumstances. Louisiana State Bar Association v. Fish, 562 So.2d 892, 896 (La. 1990); Louisiana State Bar Association v. Starr, 515 So.2d 776, 779-80 (La. 1987); Pugh, 508 So.2d at 1355.
Harrington is guilty of two instances of making false statements, one of which involved misleading opposing counsel and the court. He is also guilty of two instances of unduly embarrassing, delaying or burdening a third person, one of which included making criminal threats. He is, in addition, guilty of an instance of improper ex parte communication with a judge. The Commissioner felt serious disciplinary action against Harrington is warranted. Petitioner contends substantial discipline is in order. Respondent concedes his inappropriate conduct is not a model of professional decorum.
We find numerous aggravating factors and few mitigating factors exist. Harrington had committed four prior disciplinary offenses for which he received private reprimands. He engaged in a pattern of misconduct evidencing a lack of respect for the administration of justice and for the rights of third persons. He engaged in conduct which constitutes multiple offenses, consistently flouting the rules to which those who are licensed to practice law must conform their conduct. We are also mindful of the vulnerability of the victims. Margaret Freidkin suffered from hypertension, a condition which was doubtless exacerbated by receiving a communication from Harrington threatening her with extradition and criminal prosecution on unspecified felony charges. Likewise, Deborah James was intimidated by Harrington's bullying manner while attempting to move into her new home.
In mitigation, we find Harrington was relatively inexperienced in the practice of law. At the time of these infractions he had been admitted to the practice of law for only a few years. He has also shown some regret over his past activities, although we cannot determine the degree of remorse, if any, he has experienced.

Conclusion
The misconduct of which respondent is guilty warrants serious disciplinary action. The few mitigating factors are substantially outweighed by the aggravating factors. The cumulative effect of Harrington's course of misconduct upon the judicial system, the legal profession, and the innocent third persons whom he has intimidated must factor into the discipline to be imposed. In order to maintain appropriate standards of professional conduct to safeguard the public, to preserve the integrity of the legal profession, and to deter other lawyers from engaging in violations of the Rules of Professional Conduct, we conclude an eighteen month suspension from the practice of law is appropriate discipline under the circumstances.

Decree
For the reasons assigned, Patrick H. Harrington is suspended from the practice *524 of law for a period of eighteen months, effective upon the finality of this decree. All costs incurred are to be borne by respondent.
SUSPENSION ORDERED.
CALOGERO, C.J., concurs in part and dissents regarding the discipline imposed. A six months suspension would be more appropriate in this case.
DENNIS, J., concurs in part and dissents in part with reasons.

ON REHEARING
PER CURIAM.
We granted a rehearing in this matter to consider the penalty imposed upon respondent, Patrick H. Harrington. Considering respondent's conduct caused no harm to his clients and his inexperience and remorse, we believe that an eighteen-month suspension from the practice of law is too severe a penalty. Rather, we find that suspension from the practice of law for a period of nine months is a more appropriate disciplinary action in this matter.

DECREE
For the reasons assigned, it is ordered that Patrick H. Harrington be suspended from the practice of law in the State of Louisiana for a period of nine months. All costs of these proceedings are cast against respondent.
COLE, J., respectfully dissents.
HALL, J., recused.
NOTES
[*] Judge Philip C. Ciaccio of the Court of Appeal, Fourth Circuit, participated in this decision as Associate Justice ad hoc sitting for Associate Justice Pike Hall, Jr., recused.
[1] Rule 4.1(a) provides: "[i]n the course of representing a client a lawyer shall not knowingly:

(a) Make a false statement of material fact or law to a third person. . . ."
Rule 4.3 provides: A lawyer shall assume that an unrepresented person does not understand the lawyer's role in a matter and the lawyer shall carefully explain to the unrepresented person the lawyer's role in the matter.
During the course of a lawyer's representation of a client, the lawyer should not give advice to a non-represented person other than the advice to obtain counsel.
Rule 4.4 provides: "[i]n representing a client, a lawyer shall not use means that have no substantial purpose other than to embarrass, delay, or burden a third person, or use methods of obtaining evidence that violate the legal rights of such a person."
[2] Rule 1.2(c) provides

A lawyer shall not counsel a client to engage, or assist a client, in conduct that the lawyer knows is criminal or fraudulent, but a lawyer may discuss the legal consequences of any proposed course of conduct with a client and may counsel or assist a client to make a good faith effort to determine the validity, scope, meaning or application of the law.
Rule 3.3(a) provides, in pertinent part, a lawyer
shall not knowingly: (1) Make a false statement of material fact or law to a tribunal; (2) Conceal or knowingly fail to disclose that which he is required by law to reveal; however, if a lawyer discovers that his client has perpetrated a fraud on the tribunal, he shall promptly call on his client to rectify same and, if the client shall refuse to do so or be unable to do so, the lawyer shall reveal the fraud to the affected person or tribunal....
Rule 4.1(a) has been set forth supra note 1. Rule 4.1(b) provides "[i]n the course of representing a client a lawyer shall not knowingly: (b) Fail to disclose a material fact to a third person when disclosure is necessary to avoid assisting a criminal or fraudulent act by a client, unless disclosure is prohibited by Rule 1.6."
Rule 8.4 provides
It is professional misconduct for a lawyer to: (a) Violate or attempt to violate the Rules of Professional Conduct, knowingly assist or induce another to do so, or do so through the acts of another; (b) commit a criminal act especially one that reflects adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer in other respects; (c) Engage in conduct involving dishonesty, fraud, deceit or misrepresentation; (d) Engage in conduct that is prejudicial to the administration of justice....
[3] Griffith fled the state and remains a fugitive.
[4] The proscription against conduct that is prejudicial to the administration of justice, while phrased somewhat broadly, involves, in most but not all cases, misconduct during litigation. See, e.g., Louisiana State Bar Association v. Kilgarlin, 550 So.2d 600 (La.1989) (commingling of client funds, failure to return file to client after being dismissed, abandoning clients, failure to give proper accounting of fees received); Louisiana State Bar Association v. Roussel, 545 So.2d 989 (La.1989) (conduct involving deceit to conceal neglect of legal matter); In re Yengo, 92 N.J. 9, 455 A.2d 457 (1983) (failure to appear); State ex rel. Oklahoma Bar Association v. Hensley, 661 P.2d 527 (Okla.1983) (failure to reveal facts); In re James, 452 A.2d 163 (D.C.1982), cert. denied, 460 U.S. 1038, 103 S.Ct. 1429, 75 L.Ed.2d 789 (1983) (misleading court); Toledo Bar Association v. Fell, 51 Ohio St.2d 33, 364 N.E.2d 872 (1977) (deception of court).
[5] Specification number 3 was not pursued by the Committee.
[6] The text of Rule 4.4 is set forth supra note 1. Rule 8.4(h) provides "[i]t is professional misconduct for a lawyer to: (h) Present, participate in presenting, or threaten to present criminal charges solely to obtain an advantage in a civil matter."
[7] Rule 4.4 has been set forth supra note 1. Rule 8.4(a), (c), (d) has been set forth supra note 2. Rule 3.5 provides "[a] lawyer shall not: (a) Seek to influence a judge, juror, prospective juror or other official by means prohibited by law; (b) Communicate ex parte with such a person except as permitted by law; or (c) Engage in conduct intended to disrupt a tribunal."
[8] Judge Clark was to preside that morning over a hearing to set bond for Brumlett.