515 So.2d 776 (1987)
LOUISIANA STATE BAR ASSOCIATION
v.
Michael F. STARR.
No. 87-B-0782.
Supreme Court of Louisiana.
November 30, 1987.
*777 Thomas O. Collins, Jr., G. Fred Ours, New Orleans, Gerard F. Thomas, Jr., Natchitoches, Roland J. Achee, Shreveport, Robert J. Boudreau, Lake Charles, Robert M. Contois, New Orleans, Frank J. Gremillion, Baton Rouge, Carrick R. Inabnett, Monroe, Harvey Lewis, New Orleans, Alfred S. Landry, New Iberia, and Philippi P. St. Pee, Metairie, for applicant.
Melvin W. Mathes, New Orleans, for respondent.
Michael F. Starr, Melbourne, Fla., pro se.
MARCUS, Justice.
The Louisiana State Bar Association, through its Committee on Professional Responsibility, instituted a proceeding against Michael F. Starr, a member of said association. Prior to the commencement of this proceeding, the committee had conducted investigations of respondent's alleged misconduct in accordance with article 15, section 3 of the articles of incorporation of the association. Notice of the proceeding, which involved one specification of misconduct, was sent to respondent by certified and regular mail at various dates during January and February of 1986.[1] On April 30, 1986, a curator ad hoc, Melvin W. Mathes, was appointed by this court to represent respondent because the committee was unable to locate respondent who had moved out of state.
The committee held a formal investigative hearing on this specification on January 29, 1987, as provided in article 15, section 3(b) of the articles of incorporation. The respondent failed to appear and was represented by his duly-appointed curator ad hoc. Based on the evidence adduced at the hearing, the committee was of the unanimous opinion that respondent had violated laws of the state relating to the professional conduct of lawyers and the practice of law of sufficient gravity as to evidence a lack of moral fitness for the practice of law. Specifically, the committee found that respondent was guilty of the misconduct described in the specification.
On April 8, 1987, the committee instituted in this court a suit for disciplinary action against respondent under the provisions of article 15, section 4(c) of the articles of incorporation. The curator ad hoc filed an answer to the petition.
The court, by order, then appointed Mr. Daniel A. Post as commissioner to take evidence and file a report with this court setting forth his findings of fact and conclusions of law. Louisiana State Bar Association Articles of Incorporation, article 15, section 6(b) and (d).
A hearing before the commissioner was held on June 16, 1987. Respondent and his attorney were present.[2] The committee introduced in evidence the entire record of disciplinary proceedings,[3] including the original pleadings filed into the record and the transcripts and original exhibits from the committee hearing as well as the testimony of Charles M. Stevenson. Respondent testified on his own behalf. Thereafter, the commissioner filed with this court his written report on August 13, 1987, wherein he stated his findings of fact and conclusions of law. The committee concurred with the commissioner's findings. After oral argument before this court, the matter was submitted for our determination on the record before the commissioner.
The bar association has the burden of establishing by clear and convincing evidence that respondent was guilty of the *778 alleged specifications of misconduct. Louisiana State Bar Association v. Dowd, 445 So.2d 723 (La.1984). The following allegation of misconduct has been made against respondent.
Specification No. 1 alleged:
That in your capacity as Attorney at Law, you were retained by one Donna Wallace to represent he [sic] husband, Charles K. Wallace, at a parole hearing. That between August 13, 1981 and October 9, 1981, you were paid the sum of $7,000.00 for said representation. That you did fail, neglect, and refuse to perform any work in such representation and have failed, neglected, and refused any unearned portion of the fee. That you [sic] conduct in this matter is in violation of Disciplinary Rules DR 7-101(A)(2),[4] DR 6-101(A)(3),[5] and DR 2-110(A)(3),[6] and DR 1-102(A)(3)(4)(5)(6)[7] of the Code of Professional Responsibilty of the Louisiana State Bar Association.
Evidence submitted at the hearings established that respondent, Michael F. Starr, was hired by Mrs. Donna George Wallace to represent her husband in a parole hearing in Angola, Louisiana.[8] Respondent charged Mrs. Wallace a flat fee of $7,000 to be paid in advance. Mrs. Wallace paid Mr. Starr the fee by a series of five checks, the last being dated October 9, 1981. The fee was to cover the entire representation including investigation, preparation and representation at the parole hearing. Respondent testified that after being retained by Mrs. Wallace, he gathered information and documents for the parole hearing. He stated that Mr. Wallace's parole was a complex matter because Mr. Wallace had previously had a parole revoked in St. Bernard Parish based on a conviction in St. Tammany Parish. This required him to go to St. Tammany and St. Bernard Parishes to meet with public officials who were involved in the conviction and parole revocation. Respondent also testified that he went to Baton Rouge to meet with the administrative personnel of the parole board. He also went to Angola to meet with Mr. Wallace and the prison chaplan and had frequent contacts with Mrs. Wallace during this time.
By Bill of Sale dated January 21, 1982, respondent sold some office furniture to Charles M. Stevenson, an attorney. Respondent asked Mr. Stevenson to take possession of his files so that his clients could pick them up. Before Mr. Wallace's parole hearing was held, respondent moved to Florida to work with a television station.
According to the testimony of respondent, he attempted to notify his clients that he had abandoned his law practice in Louisiana by sending letters to all of his clients and by putting an ad in the newspaper. According to the testimony of Mrs. Wallace, she was never notified by respondent of his leaving the state. Mrs. Wallace testified that she found out about respondent's actions when she called his office and was told that respondent had moved and that Mr. Stevenson had all of respondent's files. Mrs. Wallace then visited Mr.
*779 Stevenson who agreed to complete the representation of Mr. Wallace pro bono as a part of his Christian ministry. There was never an agreement between Mr. Stevenson and respondent for the representation of Mr. Wallace.
Mr. Stevenson testified that when he took over the representation of Mr. Wallace, respondent's file contained letters obtained by Mrs. Wallace and five pages of notes. Mr. Stevenson subsequently prepared a parole plan which was submitted by him to the parole board and then represented Mr. Wallace at the parole hearing. The result of this parole hearing was that parole for Mr. Wallace was denied. Nevertheless, Mr. Wallace was soon released from prison as a result of habeas corpus proceedings. Mr. and Mrs. Wallace subsequently engaged Mr. Stevenson to handle several other legal matters for them, all unrelated to Mr. Wallace's former incarceration.
Respondent never made any accounting for the $7,000 fee paid in advance nor did he ever refund any portion of that fee to Mrs. Wallace. Subsequently, Mrs. Wallace filed a complaint with the Committee on Professional Responsibility.
Respondent argues that since Mr. Stevenson completed the representation of Mr. Wallace at no charge, Mrs. Wallace has no reason to complain because in effect the representation was completed for the $7,000 agreed upon fee. Respondent, however, misses the point. Mr. Stevenson's completion of the representation at no charge did not inure to the benefit of respondent. It instead inured to the benefit of Mrs. Wallace. As stated before, there was no agreement between Mr. Stevenson and respondent for the sharing of the fee. Mr. Stevenson agreed to represent Mr. Wallace pro bono primarily to help Mr. Wallace and not to help respondent. Respondent accepted the $7,000 from Mrs. Wallace with the promise to complete the representation of Mr. Wallace. He failed to complete that representation. Since complete services were not performed as contemplated by the fee agreement, a portion of the fee was unearned and should have been returned to Mrs. Wallace. We find that the record fully supports the conclusion that respondent failed to refund promptly that portion of the fee paid in advance that had not been earned in violation of DR 2-110(A)(3).[9] As did the committee, we find that respondent also violated DR 7-101(A)(2), DR 6-101(A)(3) and DR 1-102(A)(5) and (6).[10]
The evidence establishes that respondent had spent time investigating the possibility of Mr. Wallace's parole and had visited various people in connection with the parole hearing. However, it was Mr. Stevenson who prepared the parole plan for the parole hearing and represented Mr. Wallace at the hearing. Under the circumstances, we find that respondent performed slightly less than one half of the work necessary to complete the parole board representation. Therefore, we consider that $4,000 of the $7,000 fee was unearned by respondent.[11]
The purpose of lawyer disciplinary proceedings is not primarily to punish the lawyer but rather to maintain appropriate standards of professional conduct to safeguard the public, to preserve the integrity of the legal profession and to deter other lawyers from engaging in violations of the Code of Professional Responsibility. The discipline to be imposed will depend upon the seriousness of the offense involved and the facts and circumstances of each case. The court will take into account both aggravating *780 and mitigating circumstances. Louisiana State Bar Association v. Hickman, 471 So.2d 696 (La.1985); Louisiana State Bar Association v. Whittington, 459 So.2d 520 (La.1984).
Having found respondent guilty of the specification of misconduct, we consider that disciplinary action is warranted. Respondent has been found guilty of failing to promptly refund an unearned fee to his client. We find that the unearned fee that respondent failed to return totaled $4,000.
We conclude that an official public reprimand would be the appropriate disciplinary action for respondent's conduct in this matter and that respondent be required to pay $4,000 in unearned legal fees to Mrs. Wallace. Payment should be made on or before 60 days from the date this judgment becomes final and proof of said payment furnished to the committee. Upon failing to furnish proof of this payment within said time limit, respondent shall be suspended from the practice of law until such time as he furnishes proof to the committee that said payment has been made.[12]See Louisiana State Bar Association v. Pugh, 508 So.2d 1350 (La.1987).

DECREE
For the reasons assigned, it is ordered, adjudged and decreed that Michael F. Starr be and he is hereby publicly reprimanded for his conduct in this matter. Respondent is further ordered to pay $4,000 in unearned legal fees to Donna George Wallace on or before 60 days from the date this judgment becomes final and to furnish proof of said payment to the committee. Upon failing to furnish proof of this payment within said time limit, Michael F. Starr shall be suspended from the practice of law until such time as he furnishes proof to the committee that said payment has been made. Respondent is to bear all costs of these proceedings.
NOTES
[1] One letter dated January 20, 1986 was sent by regular mail to respondent's address in Metairie, Louisiana. Another letter dated January 21, 1986 was sent by certified mail to respondent's address in Melbourne, Florida. A third letter dated February 20, 1986 was sent by certified mail to respondent's address in Chattanooga, Tennessee. A fourth letter also dated February 20, 1986 was sent by ordinary mail to respondent's address in Chattanooga, Tennessee. All of these letters were returned as unclaimed.
[2] Before the commissioner's hearing, respondent found out about these proceedings. He then retained the curator ad hoc as counsel.
[3] This evidence included the testimony of Kathleen M. Frank and Donna George Wallace taken on January 29, 1987 at the formal investigative hearing.
[4] DR 7-101(A)(2) provides that:

(A) A lawyer shall not intentionally:
. . . .
(2) Fail to carry out a contract of employment entered into with a client for professional services, but he may withdraw as permitted under DR 2-110, DR 5-102, and DR 5-105.
[5] DR 6-101(A)(3) provides that:

(A) A lawyer shall not:
. . . .
(3) Neglect a legal matter entrusted to him.
[6] DR 2-110(A)(3) provides that:

(A) In general.
. . . .
(3) A lawyer who withdraws from employment shall refund promptly any part of a fee paid in advance that has not been earned.
[7] DR 1-102 provides in relevant part that:

(A) A lawyer shall not:
. . . .
(3) Engage in illegal conduct involving moral turpitude.
(4) Engage in conduct involving dishonesty, fraud, deceit, or misrepresentation.
(5) Engage in conduct that is prejudicial to the administration of justice.
(6) Engage in any other conduct that adversely reflects on his fitness to practice law.
[8] Previously, respondent had represented Mrs. Wallace in a divorce case for which he had been paid in full.
[9] The commissioner made a similar finding in which the committee concurred.
[10] However, the record does not indicate that respondent violated DR 1-102(A)(3) and (4). The committee made no findings as to these provisions.
[11] The commissioner made no finding as to the unearned portion of respondent's fee and only recommended that disciplinary action be taken against respondent. However, the committee recommended that respondent be required to return the unearned portion of his fee and found that respondent had only performed approximately one-fourth to one-half of the work necessary to complete the parole board representation.
[12] The committee recommended similar disciplinary action.