550 So.2d 600 (1989)
LOUISIANA STATE BAR ASSOCIATION
v.
Ronald J. KILGARLIN.
No. 88-B-2078.
Supreme Court of Louisiana.
October 23, 1989.
*601 Thomas O. Collins, Jr., G. Fred Ours, Harvey J. Lewis, Elizabeth A. Alston, New Orleans, Robert J. Boudreau, Lake Charles, Trevor G. Bryan, Robert M. Contois, Jr., New Orleans, Frank J. Gremillion, Baton Rouge, William W. Hall, Gretna, Carrick R. Inabnett, Monroe, T. Haller Jackson, III, Shreveport, Christine Lipsey, Baton Rouge, Edmund McCollam, Houma, Gerard F. Thomas, Jr., Natchitoches, for applicant.
Ronald J. Kilgarlin, Robert G. Creely, Gretna, Curator Ad Hoc, for respondent.

DISCIPLINARY PROCEEDINGS
MARCUS, Justice.
The Louisiana State Bar Association, through its Committee on Professional Responsibility, instituted disciplinary proceedings against Ronald J. Kilgarlin, a member of said association. The committee had previously conducted an investigation of respondent's alleged misconduct in accordance with article 15, section 3 of the articles of incorporation of the association. The committee sent notice of nine specifications of misconduct to respondent by certified and regular mail on May 31, 1988.[1]
A formal investigative hearing was held on July 1, 1988. Respondent failed to appear and was not represented. Based upon its investigation at the hearing, the committee, by unanimous vote, was of the opinion that respondent had been guilty of a violation of the laws of this state relating to the professional conduct of lawyers and to the practice of law of sufficient gravity as to evidence a lack of moral fitness for the practice of law; that specifically, respondent was guilty of the misconduct described in the specifications.[2]
On August 8, 1988, the committee filed a petition for disciplinary action against respondent in this court under article 15, section 4(c) of the articles of incorporation. Respondent did not file an answer to this petition.
The court, by order, then appointed Dan R. Dorsey as commissioner to take evidence and file a report with this court setting forth his findings of fact and conclusions of law. Louisiana State Bar Association, article 15, section 6(b) and (d). On October 13, 1988, the court also appointed Robert G. Creely as a curator ad hoc to represent respondent.
A hearing before the commissioner was held on February 24, 1989. Respondent did not attend this hearing but his curator was present. Over the curator's objection, the commissioner admitted into evidence the entire record of the disciplinary proceedings, including the transcript of testimony taken at the committee hearing.[3] Thereafter, *602 on April 18, 1989, the commissioner filed his written report with this court, wherein he set out his findings of fact and conclusions of law. The commissioner made no specific recommendation as to discipline. The committee concurred with the commissioner's findings. In its brief to this court, the committee recommended that respondent be disbarred. The matter was submitted without oral argument to this court for determination on the record before the commissioner.
The bar association has the burden of establishing by clear and convincing evidence that respondent was guilty of the alleged specifications of misconduct. Louisiana State Bar Association v. Dowd, 445 So.2d 723 (La.1984).

SPECIFICATION NO. 1
The first specification of misconduct concerns respondent's handling of funds belonging to his clients, Mr. and Mrs. Calvin Williams, from the settlement of an automobile accident case. It is alleged that respondent commingled and converted their funds to his own use; that respondent misinformed them that the settlement would include a separate payment for their medical bills; that they remain responsible for their medical bills; that respondent refused to communicate with them concerning these matters; and that respondent made partial restitution to them. Based on these alleged facts, respondent was charged with violating the following Rules of Professional Conduct: Rules 1.2, 1.3, 1.4, 1.5(c), 1.15, and 8.4(a), (c), (d).[4]
*603 Mr. and Mrs. Williams testified at the investigative hearing that on or about March 27, 1987, they signed settlement checks totaling $4,790 in respondent's office. Respondent told them that the checks would clear in ten days. Respondent did not provide them with a written statement of the outcome of their case, the amount of their share of the settlement, or the method of determining their share. He failed to pay them for nearly seven weeks. On May 11, 1987, respondent gave them a check for $1,000 and agreed to pay them the remainder of their share within ten days. Mr. Williams testified that the bank refused to cash the check because of insufficient funds. On the other hand, Mrs. Williams stated that the bank said that it would take ten days before the check would clear. Accordingly, they returned the check to respondent. On May 12, 1987, he paid them $2,000 in cash and on May 14, 1987, he paid them an additional $500 in cash. He still owes them $700.[5]
Clearly, respondent failed to maintain the settlement funds in a separate bank account. When an attorney fails to deposit his client's funds in an identifiable separate bank account, the burden is on the attorney to show that he did not commingle or convert his client's funds. Louisiana State Bar Association v. Williams, 512 So.2d 404 (La.1987). Respondent has not met this burden. We agree with the commissioner that respondent commingled and converted his clients' funds in violation of Rule 1.15.
According to the Williamses' testimony, respondent delayed paying their $3,000 doctor's bill until the doctor threatened to sue them. They told the doctor to contact respondent. They have heard nothing since then, and they implied in their testimony that they might still be responsible for the medical bill. The committee did not prove that the Williamses remain responsible for the medical bill. However, we agree with the commissioner that respondent violated Rule 1.3 by failing to act with diligence and promptness in paying the Williamses' medical bill. We also agree that respondent violated Rules 1.4 and 1.5(c) by failing to keep the Williamses informed about the status of their case and failing to provide an accounting after the recovery. Further, we agree that respondent violated Rule 8.4(a), (c), (d). We do not find that the committee proved that respondent violated Rule 1.2.

SPECIFICATION NO. 3
The third specification alleges that respondent failed to inform his clients, Major Roe and his wife, about their waiver application to the Veterans Administration; that he failed to act with reasonable promptness and diligence in representing them; and that after they discharged him and requested their file from him, he failed or refused to return their file. It is alleged that respondent violated DR 1-102(A)(1), (4), (5), (6), 2-110(A), 6-101(A)(3), and 7-101(A) of the Code of Professional Responsibility[6] *604 and Rules 1.3, 1.4, 1.16(d), and 8.4(a), (c), (d) of the Rules of Professional Conduct.[7]
Major Roe testified at the investigative hearing that he had sold his house and the buyer had assumed his Veterans Administration mortgage. After the buyer defaulted on the mortgage, the Veterans Administration asked Major Roe to repay $15,000 on it. On October 10, 1986, Major Roe hired respondent to apply to the Veterans Administration for a waiver from liability on the mortgage. Major Roe paid respondent's former law firm a $750 retainer. Major Roe further testified that in April, 1987, he discovered that the maximum legal fee for representing him against the Veterans Administration was $10. On April 21, 1987, Major Roe discharged respondent because of respondent's failure to return phone calls or keep appointments. Major Roe asked for a refund of $740 and for the return of his file which he considered of vital importance because it contained his real estate papers and correspondence. Respondent told Major Roe that he had the file in his briefcase and would send it to him. However, he failed to do so. Because respondent failed to return the file, Major Roe was forced to attend a Veterans Administration hearing scheduled for July 23, 1987 without his file. Major Roe did receive a refund of the $750 retainer from respondent's former law firm.
We agree with the commissioner that respondent violated Rules 1.16(d) and 8.4(a), (c), (d) of the Rules of Professional Conduct by failing to return the file and deceiving Major Roe about returning the file. We do not agree that respondent violated Rules 1.3 or 1.4 of the Rules of Professional Conduct because there was insufficient proof that a violation of these rules occurred before Major Roe discharged respondent.

SPECIFICATIONS NOS. 5 AND 7
Specifications Nos. 5 and 7 arise from respondent's abandonment of two clients, Mr. Craven and Mr. Price, who had hired him to defend them against criminal charges involving drugs. It is alleged that respondent accepted advance fees for representing these clients; failed to appear in court on behalf of his clients; failed to communicate with his clients; failed to deposit his clients' advance fees in an attorney trust account; failed to make an accounting to his clients or return the unearned portion of the advance fees; commingled and converted the advance fees to his own use; and misled Mr. Price concerning the filing of motions and other matters. It is alleged that respondent violated Rules 1.3, 1.4, 1.15, 1.16(d), and 8.4(a), (c), (d) of the Rules of Professional Conduct[8] in his representation of both Mr. Craven and Mr. Price. It is further alleged that respondent violated DR 1-102(A) and DR 9-102(A)(B) of the Code of Professional Responsibility[9] in representing Mr. Craven.
Mr. Craven testified at the investigative hearing that respondent was paid $5,000 to represent him. The committee admitted the contract of employment between Mr. Craven and respondent, which was entitled "Retainer Agreement." In the contract, respondent bound himself to represent Mr. *605 Craven "by conference, negotiations, or otherwise at District Court level." The contract states that the fee of $5,000 is "a minimum fee, non-refundable" and sets attorney fees at $75 an hour. Mr. Price also testified that he had paid respondent $3,850 to represent him. There is no evidence as to whether respondent and Mr. Price signed an employment contract.
Despite his acceptance of those fees, respondent did not complete his representation of Mr. Craven or Mr. Price. According to their testimony, respondent failed to appear in court on two or three occasions and eventually was held in contempt of court. Mr. Craven remained in jail for seven months during this time and eventually decided to plea bargain. Mr. Price was out on bail. Both Mr. Craven and Mr. Price had to obtain other counsel for sentencing. Respondent misled them by first telling them that he would file a motion to suppress and then by telling them that if they did not contest the motion to suppress they could plea bargain and receive probation. They both served jail time. Mr. Price was sentenced to three years in jail.
The payments to respondent were advance fees or retainers for particular services not yet performed.[10] Respondent was bound by Rule 1.16(d) to refund "any advance payment of fee that has not been earned." Thus, although the employment contract with Mr. Craven stated that the advance fee was non-refundable, respondent was required by Rule 1.16(d) to refund any unearned amount. Respondent met with Mr. Craven three times. One of these meetings was in court on a motion to suppress and the others were either in court or jail. Respondent met with Mr. Price twice in court, once on a motion to suppress. Respondent met with the district attorney on both cases. We find that respondent earned a fee of $1,500 in representing Mr. Craven and the same fee in representing Mr. Price. Therefore, he must refund $3,500 to Mr. Craven and $2,350 to Mr. Price.
We agree with the commissioner that respondent violated Rules 1.3, 1.4, 1.16(d), and 8.4(a), (d) of the Rules of Professional Conduct by abandoning Mr. Craven and Mr. Price without any advance notification to them. He also violated Rule 8.4(c) of the Rules of Professional Conduct by misleading them about whether their plea bargain would lead to jail time and about the motion to suppress.

SPECIFICATIONS NOS. 2, 4, 6 AND 8
Specifications Nos. 2, 4, 6, and 8 allege that respondent failed to reply to the committee's correspondence regarding its investigation of Specifications Nos. 1, 3, 5, and 7, in violation of Rule 8.4(g).[11] The committee has repeatedly sent copies of the specifications to respondent at various addresses. Respondent has made no reply. The curator has informed respondent of these proceedings but respondent still has failed to respond. We agree that respondent violated Rule 8.4(g).

SPECIFICATION NO. 9
The ninth specification alleges that respondent continued to practice law in Louisiana after he had become ineligible to do so in violation of Rule 5.5 of the Rules of Professional Conduct.[12] The committee *606 proved that respondent became ineligible to practice law on July 31, 1987. But the committee did not prove that respondent practiced law in Louisiana after he became ineligible; therefore, the committee did not prove Specification No. 9.

DISCIPLINE
Having found respondent guilty of misconduct, we consider that disciplinary action is warranted. The discipline to be imposed will depend upon the seriousness of the offense involved and the facts and circumstances of each case. The court will take into account both aggravating and mitigating circumstances. Louisiana State Bar Association v. Starr, 515 So.2d 776 (La.1987).
While respondent is guilty of commingling and converting the Williamses' funds, respondent did return $2,500 of their portion of the settlement ($3,200) within seven weeks of the settlement. He still owes them $700. Moreover, he delayed paying their doctor's bill and failed to keep them informed or provide an accounting of their settlement. He failed to return Major Roe's file and deceived him about returning the file. Respondent abandoned Mr. Craven and Mr. Price without providing any advance notification to them, misled them about a motion to suppress and their plea bargains, and failed to return the unearned fees to them. He has also failed to cooperate with the bar committee. Respondent had substantial experience in the practice of law (over nine years). In mitigation, he has no prior disciplinary record and was suffering marital problems at the time of his misconduct.
Taking into account the aggravating factors as well as the mitigating factors, we do not find that respondent should be disbarred. Rather, we consider that respondent should be suspended from the practice of law for two years from the date of this decree. However, reinstatement will not be automatic. Respondent may apply for reinstatement after the lapse of the two-year period upon a showing to the committee that he has made restitution for excessive fees charged of $3,500 to Mr. Craven and $2,350 to Mr. Price. He must also refund the $700 he owes to Mr. and Mrs. Williams. If possible, he must return the file to Major Roe.

DECREE
For the reasons assigned, it is ordered, adjudged, and decreed that Ronald J. Kilgarlin be suspended from the practice of law in Louisiana for two years from the date of finality of this judgment with reinstatement conditioned upon respondent's providing proof to the Committee of Professional Responsibility that he has made full restitution of the amounts owed to his clients as aforesaid. Respondent is to bear all costs of these proceedings.
DIXON, C.J., and LEMMON, J., concur.

APPENDIX
Specification No. 1 alleged:
That in your capacity as Attorney at Law, you were retained to represent the interests of one Calvin Williams and his wife, Dorothy Williams, in a matter involving an automobile accident. That you did inform your clients that the case could be settled for the sum of $5,000.00 plus the payment of all medical bills plus $290.00 for property damages to the automobile. That on or about March 27, 1987, Mr. and Mrs. Williams did appear in your office and did sign checks or drafts in the amount of $290.00 for property damages and $4,500.00 for other damages. That you did inform your clients that it would take ten (10) days for the checks to clear. That you did fail, neglect, and refuse to make any accounting to your client for any of the sums received and did fail, neglect, and refuse to disburse any of the funds to your client. That you have commingled and converted the funds of your client to *607 your own use. That on or about May 11, 1987, you did agree to make partial payment of amounts due to your client by payment of $2,500.00 with the balance to be paid in ten (10) days. That you did, in fact, pay $2,000.00 to your client on May 12, 1987 and $500.00 to your clients on May 14, 1987, all as restitution. That in truth and in fact and contrary to what you had informed your clients, there was no separate payment for the payment of medical bills and the clients remain responsible for the payment of medical bills. That you have failed, neglected, and refused to communicate with your client concerning these matters, all in violation of Rules 1.2, 1.3, 1.4, 1.5(c), 1.15, and 8.4(a), (c), (d) of the Rules of Professional Conduct of the Louisiana State Bar Association.
Specification No. 2 alleged:
That the complaint of Calvin Williams was initially forwarded to you in correspondence dated November 30, 1987. That you did fail, neglect, and refuse to reply to said correspondence, and further correspondence was forwarded to you under date of February 24, 1988 and April 8, 1988, wherein you were advised of the contents of Rule 8.4(g) of the Rules of Professional Conduct of the Louisiana State Bar Association. That you did fail, neglect, or refuse to reply to said correspondence and have failed to cooperate with the Committee on Professional Responsibility in its investigation of your alleged misconduct all in violation of Rule 8.4(g) of the Rules of Professional Conduct of the Louisiana State Bar Association.
Specification No. 3 alleged:
That in your capacity as Attorney at Law, you were retained to represent the interests of Major and Mrs. W. Wayne Roe in a matter involving waiver requests for liability of deficiency payment involved in the assumption of a V.A. mortgage which had been assumed by the purchaser of property sold by Major and Mrs. W. Wayne Roe in 1983. That you did leave the law firm that you were with in March of 1987 and Major and Mrs. Roe did agree to your continuing to represent them in the matter. That you have failed, neglected, and refused to inform your client concerning this matter; have failed, neglected, or refuse[d] to act with reasonable deligence [sic] and promptness in representing a client; and subsequent to July 2, 1987, when the complainant, Major and Mrs. Roe, fired you and requested their materials from you, you have failed, neglected, or refused to return the file materials to your clients. All of the above in violation of Disciplinary Rules DR 1-102(A)(1), (4), (5), (6), DR 2-110(A), DR 6-101(A)(3), and DR 7-101(A) of the Code of Professional Responsibility and Rules 1.3, 1.4, 1.16(d) and 8.4(a), (c), (d) of the Rules of Professional Conduct of the Louisiana State Bar Association.
Specification No. 4 alleged:
That the complaint fo [sic] Major and Mrs. W. Wayne Roe were [sic] forwarded to you by mail dated September 1, 1987, October 19, 1987, and January 15, 1988. That you did fail, neglect, and refuse to reply to said correspondence. That in addition, further correspondence was forwarded to you under dated [sic] of February 29, 1988 and April 8, 1988 wherein the provisions of Rule 8.4(g) of the Rules of Professional Conduct of the Louisiana State Bar Association was pointed out to you. That you did fail, neglect, and refuse to reply to said correspondence and have failed to cooperate with the Committee on Professional Responsibility in its investigation of your alleged misconduct in violation of Rule 8.4(g) of the Rules of Professional Conduct of the Louisiana State Bar Association.
Specification No. 5 alleged:
That in your capacity as Attorney at Law, you were retained to represent the interest of Stanley Keith Craven in a criminal matter. That you were paid the sum of $5,000.00 as a flat fee paid in advance. That you did fail, neglect, and refuse to appear in court on behalf of your client on April 13, 1987; that your client had to obtain the appointment of *608 counsel for sentencing; that you have failed, neglected, or refused to communicate with your client; and have failed, neglected, or refused to act with reasonable deligence [sic] and promptness in representing your client. That you did fail, neglect, and refuse to deposit said $5,000.00 fee paid in advance into an attorney trust account and have, in fact, commingled and converted said funds to your own use in advance of earning them. That you have failed, neglected, and refused to make an accounting or return to your client the unearned portion of said fee paid in advance. All in violation of Disciplinary Rules DR 1-102(A), DR 9-102(A), (B) of the Code of Professional Responsibility of the Louisiana State Bar Association, and Rules 1.3, 1.4, 1.15, 1.16(d), and 8.4(a), (c), (d) of the Rules of Professional Conduct of the Louisiana State Bar Association.
Specification No. 6 alleged:
That the complaint of Stanley Keith Craven was forwarded to you by correspondence dated September 30, 1987, again on October 21, 1987, and again on January 15, 1988. That you did fail, neglect, and refuse to reply to said correspondence. That further correspondence was forwarded to you under dates of March 1, 1988 and April 8, 1988 wherein Rule 8.4(g) of the Rules of Professional Conduct was pointed out to you. That you did fail, neglect, or refuse to reply to said correspondence and have failed to cooperate with the Committee on Professional Responsibility in its investigation of your alleged misconduct in violation of Rule 8.4(g) of the Rules of Professional Conduct of the Louisiana State Bar Association.
Specification No. 7 alleged:
That in your capacity as Attorney at Law, you were retained to represent the interest of Tommy Glenn Price on or about February of 1987 in a criminal matter. That you were paid a fee in advance in an amount of between $2,800.00 and $3,900.00. That you did fail, neglect, and refuse to deposit the fee paid in advance into an attorney's trust account and did, in fact, commingle and convert it to your own use prior to the earning of said fee. That you did fail, neglect, or refuse to show up for sentencing for your client in this matter and causing your client to have to obtain the services of another attorney at your client's cost. That you did mislead your client concerning the filing of motions and other matters in this case and have failed, neglected, and refused to communicate with your client. That you have failed, neglected, and refused to render an accounting to your client for the fee paid in advance or to return any unearned portion of the fee paid in advance and have failed, neglected or refused to act with reasonable deligence [sic] and promptness in representing a client. All in violation of Rules 1.3, 1.4, 1.15, 1.16(d), and 8.4(a)(c)(d) of the Rules of Professional Conduct of the Louisiana State Bar Association.
Specification No. 8 alleged:
That the complaint of Tommy Glenn Price was forwarded to you by correspondence dated October 23, 1987 and January 15, 1988. That you did fail, neglect, or refuse to reply to said correspondence. That further correspondence was forwarded to you under date of April 27, 1988 wherein the contents of Rule 8.4(g) were pointed out to you. That you did fail, neglect, or refuse to reply to said correspondence and have failed, neglected, and refused to cooperate with the Committee on Professional Responsibility in its investigation of your alleged misconduct in violation of Rule 8.4(g) of the Rules of Professional Conduct of the Louisiana State Bar Association.
Specification No. 9 alleged:
That you did become ineligible to practice law in the State of Louisiana on July 31, 1987 due to the non-payment of bar dues. In spite of this, you have continued to represent clients and have engaged in the practice of law in a jurisdiction where doing so violated the regulation of the legal profession in that jurisdiction in *609 violation of Rule 5.5 of the Rules of Professional Conduct of the Louisiana State Bar Association.
NOTES
[1] In response to a September 30, 1987 letter by the committee to respondent setting forth a pending complaint, respondent's ex-wife informed the committee that respondent's new address was 55 Bimini Avenue, Kenner, Louisiana. Respondent's father later testified that this was respondent's father's address. The committee sent notice of the specifications of misconduct to respondent at his father's address on May 31, 1988. The committee also sent notice on that day to Crosby, Mississippi (which respondent's father later testified was respondent's grandmother's address) and to respondent's girlfriend's address in Baton Rouge. His grandmother signed for the certified mail in Mississippi, but the other certified letters were returned unclaimed. The regular mail copies were not returned.
[2] The specifications of misconduct are listed in an appendix to this opinion.
[3] The curator objected at the commissioner's hearing because respondent was not present nor represented at the committee hearing. The curator questioned whether respondent had received adequate notice of the committee hearing. In his brief to this court, the curator implies that due process requirements have not been met. We think they have been met. The committee made diligent efforts to contact respondent prior to its hearing. See supra note 1. Also, subsequent to the committee hearing and prior to the commissioner's hearing, the curator spoke with respondent and asked him to participate in his own defense. Respondent chose not to do so.
[4] Rule 1.2 provides:

(a) Both lawyer and client have authority and responsibility in the objectives and means of representation. The client has ultimate authority to determine the purposes to be served by legal representation, within the limits imposed by law and the lawyer's professional obligations.
(b) A lawyer may limit the objectives of the representation if the client consents after consultation.
(c) A lawyer shall not counsel a client to engage, or assist a client, in conduct that the lawyer knows is criminal or fraudulent, but a lawyer may discuss the legal consequences of any proposed course of conduct with a client and may counsel or assist a client to make a good faith effort to determine the validity, scope, meaning or application of the law.
(d) When a lawyer knows that a client expects assistance prohibited by the rules of professional conduct or other law, the lawyer shall consult with the client regarding the relevant limitations on the lawyer's conduct.
Rule 1.3 provides:
A lawyer shall act with reasonable diligence and promptness in representing a client.
Rule 1.4 provides:
(a) A lawyer shall keep a client reasonably informed about the status of a matter and promptly comply with reasonable requests for information.
(b) The lawyer shall give the client sufficient information to participate intelligently in decisions concerning the objectives of the representation and the means by which they are to be pursued, to the extent the client is willing and able to do so.
Rule 1.5(c) provides:
A fee may be contingent on the outcome of the matter for which the service is rendered except in a matter in which a contingent fee is prohibited by Paragraph (d) or other law. A contingent fee agreement shall be in writing and shall state the method by which the fee is to be determined, including the percentage or percentages that shall accrue to the lawyer in the event of settlement, trial or appeal, litigation and other expenses to be deducted from the recovery, and whether such expenses are to be deducted before or after the contingent fee is calculated. Upon conclusion of a contingent fee matter, the lawyer shall provide the client with a written statement stating the outcome of the matter and, if there is a recovery, showing the remittance to the client and the method of its determination.
Rule 1.15 provides:
(a) A lawyer shall hold property of clients or third persons that is in a lawyer's possession in connection with a representation separate from the lawyer's own property. Funds shall be kept in a separate account maintained in a bank or similar institution in the state where the lawyer's office is situated, or elsewhere with the consent of the client or third person. Other property shall be identified as such and appropriately safeguarded. Complete records of such account funds and other property shall be kept by the lawyer and shall be preserved for a period of five years after termination of the representation.
(b) Upon receiving funds or other property in which a client or third person has an interest, a lawyer shall promptly notify the client or third person. Except as stated in this rule or otherwise permitted by law or by agreement with the client, a lawyer shall promptly deliver to the client or third person any funds or other property that the client or third person is entitled to receive and, upon request by the client or third person, shall promptly render a full accounting regarding such property.
(c) When in the course of representation a lawyer is in possession of property in which both the lawyer and another person claim interests, the property shall be kept separate by the lawyer until there is an accounting and severance of their interests. If a dispute arises concerning their respective interests, the portion in dispute shall be kept separate by the lawyer until the dispute is resolved.
Rule 8.4(a), (c), (d) provides:
It is professional misconduct for a lawyer to:
(a) Violate or attempt to violate the Rules of Professional Conduct, knowingly assist or induce another to do so, or do so through the acts of another;
(c) Engage in conduct involving dishonesty, fraud, deceit or misrepresentation;
(d) Engage in conduct that is prejudicial to the administration of justice.
[5] Based on the agreed upon 30% contingency fee, it would appear that respondent still owes Mr. and Mrs. Williams $853. But Mr. Williams testified that respondent owes them only $700. Mrs. Williams testified that the amount owed was $790. We conclude that the amount owed is $700.
[6] On January 1, 1987, the Rules of Professional Conduct became effective and replaced the Code of Professional Responsibility. Respondent's alleged misconduct occurred after January 1, 1987. Therefore, the old disciplinary rules do not apply here.
[7] Rule 1.3. Supra note 4.

Rule 1.4. Supra note 4.
Rule 1.16(d) provides:
Upon termination of representation, a lawyer shall take steps to the extent reasonably practicable to protect a client's interests, such as giving reasonable notice to the client, allowing time for employment of other counsel, surrendering papers and property to which the client is entitled and refunding any advance payment of fee that has not been earned. The lawyer may retain papers relating to the client to the extent permitted by other law.
Rule 8.4(a), (c), (d). Supra note 4.
[8] Rule 1.3. Supra note 4.

Rule 1.4. Supra note 4.
Rule 1.15. Supra note 4.
Rule 1.16(d). Supra note 7.
Rule 8.4(a), (c), (d). Supra note 4.
[9] On January 1, 1987, the Rules of Professional Conduct became effective and replaced the Code of Professional Responsibility. Respondent's alleged misconduct occurred after January 1, 1987. Therefore, the old disciplinary rules do not apply here.
[10] As such, they are client funds which must be deposited in a trust account and not withdrawn or withheld without the client's consent. Louisiana State Bar Association v. Williams, 512 So.2d 404 (La.1987) (interpreting DR 9-102 of the Code of Professional Responsibility). But this court held that the Williams decision does not apply to advance fees paid before Williams was decided. Louisiana State Bar Association v. Tucker, 548 So.2d 1202 (La.1989). Williams was decided on September 9, 1987. The advance fees were paid prior to this date. Therefore, respondent did not violate Rule 1.15 of the Rules of Professional Conduct (substantially the same as former DR 9-102). This court is presently in the process of clarifying Rule 1.15 as to advance fees and retainers.
[11] Rule 8.4(g) provides:

It is professional misconduct for a lawyer to:
(g) Except upon the expressed assertion of a constitutional privilege, to fail to cooperate with the Committee on Professional Responsibility in its investigation of alleged misconduct.
[12] Rule 5.5 provides:

A lawyer shall not:
(a) Practice law in a jurisdiction where doing so violates the regulation of the legal profession in that jurisdiction; or
(b) Assist a person who is not a member of the bar in the performance of activity that constitutes the unauthorized practice of law.